THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAMONE MOORE, Defendant-Appellant.

First District (1st Division)   No. 1—90—3314

Opinion filed September 19, 1994.

Michael J. Pelletier and Martin S. Carlson, both of State Appellate Defender's Office, and Jeffrey J. Brown, of Winston & Strawn, both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Carol L. Gaines and Laurie Feldman, Special Assistant State's Attorneys, and Renee Goldfarb, Assistant State's Attorney, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

Defendant, Ramone Moore, was tried by a jury on the charges of attempted first degree murder (720 ILCS 5/8—4, 9—1 (West 1992)); three counts of home invasion (720 ILCS 5/12—11 (West 1992)); two counts of armed robbery (720 ILCS 5/18—2 (West 1992)); possession of a stolen motor vehicle (625 ILCS 5/4—103 (West 1992)); and aggravated battery with a deadly weapon (720 ILCS 5/12—4 (West 1992)). Other charges against the defendant under the indictment were nol-prossed by the State before trial.

The jury found defendant not guilty of attempted first degree murder. It found him guilty on two counts of home invasion; however, the court sentenced him to concurrent 60-year terms in the penitentiary for three counts of home invasion. The jury also found defendant guilty on two counts of armed robbery, for which the court imposed concurrent 60-year term sentences on the counts; possession of a stolen motor vehicle, for which the court imposed a 14-year extended-term sentence; and aggravated battery, for which a 10-year extended-term sentence was imposed.

## ISSUES

On appeal defendant contends that (1) the trial court erred by allowing into evidence lineup and in-court identification of him by the victim under circumstances where the victim had earlier inadvertently observed him in a one-on-one showup encounter in the hospital emergency room; (2) the State violated its discovery obligation by failing to disclose identification witnesses; and (3) statements made by as well as the conduct of the prosecutor during closing argument were so prejudicial as to deny him a fair trial. He also asserts that his appearance in handcuffs in the presence of the jury requires a new trial.

The remaining contentions of error concern the sentencing aspect of defendant's trial. He contends that this cause should be remanded for a new sentencing hearing (1) because he was improperly convicted

and sentenced on multiple counts of home invasion arising from a single entry into one residence; (2) because the court improperly imposed extended-term sentences; and (3) because the court abused its discretion when sentencing him by failing to consider his rehabilitation potential as a mitigating factor.

## BACKGROUND

The following facts were adduced at trial. On the evening of July 21, 1989, two masked men entered a residence in Hillside, Illinois, and robbed the owner, Mr. William Confray and his wife, Felicia Confray, of appliances, clothing, jewelry and cash. During the incident, the husband was struck in the head twice with a baseball bat, bound with an appliance cord and subsequently placed in a closet. The assailants then fled in the couple's automobile.

After unloosening themselves, the couple telephoned the police. When the police came to their home, the Confrays gave a general description of the assailants and their account of the incident. Mr. Confray described one of the assailants, later identified by him as the defendant, as "the one who wore dark gloves, a dark cloth mask and held a baseball bat over my head prior to striking me." He also said the man had extremely muscular shoulders. The couple described the second man as also wearing a mask. When the second man approached the wife's side of the bed, Mr. Confray tried to sit up, at which time he was hit in the head with the bat by the assailant standing over him. After tying up the couple, the assailants demanded a gun. When told there was none in the house, the men then proceeded to take Mrs. Confray's jewelry and other items from the bedroom. The couple next heard the men ransack the house, leave through the garage and start up the car. A few minutes later, the men returned to the house, and it was during this time, when they placed the Confrays in the closet, that Mr. Confray saw defendant's face, which no longer was covered by the mask. After giving a statement to the police, the husband was taken to the hospital where he was placed in the emergency waiting area for treatment of his injuries.

In the interim, after hearing a radio dispatch about a home invasion and flight in the owners' car, police from two police departments simultaneously began to search for the vehicle by watching traffic at a nearby expressway. One officer, observing a maroon car with a license plate beginning with the number described by one of the victims and found to be registered to their address, followed the suspect car onto the expressway. The officer followed the car when it exited the expressway until it was stopped by a red traf-

fic signal. He then got out of the police car and approached the driver, at which time, while looking through the driver's window, he noticed the back of the car was filled with items. As the officer announced his office, the light turned green and the driver, later identified as defendant, accelerated, turned and drove west on Harrison Street. The officer then attempted to follow; however, when defendant turned onto Circle Avenue, he lost sight of the car. Another officer, however, who also heard the radio dispatches was waiting on the bridge. Not seeing the car cross over the bridge, he drove into the east service drive on the side of the bridge at which time he saw a black male wearing a black jacket with a diamond-shaped emblem on the back jump out of the driver's window of a car and proceed to run until he bolted over the fence alongside the tracks.

A third officer had observed the first officer approach the driver at the stoplight and then followed to join in the pursuit. At trial, he stated that he observed "a black male with a black coat with something gold on the back of it" climb a fence, jump down a 17-foot drop and head east on the railroad tracks. By this time, several officers had arrived at the scene. The officers testified that they observed a man run into a jungle-like brush area. The officers then drew their weapons and told the man to get up; however, because the man fought violently, sending the officers rolling downhill into some bushes, the officers had to subdue and arrest him. The arrestee was defendant.

A remote control clicker for a television was found on defendant's person and its missing filter was found on the Confrays' garage floor. In addition, the husband later identified his wife's car and the 69 items found in it as those stolen from their home. Other missing items, however, were not found at that time. Later, the police technician also found a bat in the garage.

Defendant was taken to the police station where he first gave a false name. Because of the cuts on his forehead, defendant was taken to the hospital by two officers, at which time a nurse escorted them to a treatment room. Mr. Confray was lying on a gurney and waiting to be treated in the same area. Defendant was directed to a gurney only six to eight feet away form Mr. Confray. At that time, Mr. Confray motioned to an officer and when given a note pad wrote his address on it and indicated that defendant had robbed his house.

After a few minutes passed, a doctor and nurse arrived to treat defendant and the curtain was pulled between the defendant and Mr. Confray. Later that morning, Mr. Confray viewed a lineup and identified defendant as his assailant. His wife also identified defendant based on his body build.

Prior to trial defendant filed a motion to suppress evidence of Mr. Confray's identification of him. He presented the testimony of one of the officers who transported him to the emergency room. Following this testimony, the trial court ruled that the medical staff, not the police, decided to place defendant in a room with the victim and that although the encounter was accidental, it was not unduly suggestive; nor was it prejudicial to defendant. During trial, defense counsel requested a mistrial on the ground that several police officers testifying as State witnesses were surprise witnesses not disclosed during discovery. The court denied the motions.

In his defense, defendant presented the alibi testimony of a relative. He also presented the testimony of two police officers who spoke to the Confrays immediately following the incident. According to the officers' testimony, the couple did not give a detailed description of the assailants immediately following the incident.

After the trial, the court conducted the sentencing hearing. During the hearing, defendant's earlier conviction for attempted armed robbery was presented in aggravation. In mitigation, defense counsel introduced defendant's lack of criminal history, family background, education, and rehabilitation potential. Although the defendant was convicted only on two counts of home invasion, the court sentenced him to three 60-year extended-term sentences, purportedly on three conviction counts.

## OPINION

First, we will address the propriety of the trial court's ruling which denied defendant's motion to suppress the identification evidence. On appeal, the standard of review of a trial court's denial of a motion to suppress a showup identification is whether the trial court's decision was manifestly erroneous. (*People v. Stewart* (1984), 105 Ill. 2d 22, 41, 473 N.E.2d 840.) Defendant contends that the identification evidence in the present case was strongly and impermissibly suggestive and that the trial court did not look to whether the witness, Mr. Confray, had a reliable independent basis for his later identifications.

Our supreme court has held that an immediate showup identification near the scene of the crime is proper police procedure. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) Moreover, the weight to be given identification evidence, like most factual determinations, is presumptively a jury question. Only where a pretrial encounter resulting in an identification is "unnecessarily suggestive" or "impermissibly suggestive" so as to produce "a very substantial

likelihood of irreparable misidentification" is evidence of that and any subsequent identification excluded by law under the due process clause of the fourteenth amendment. See *Neil v. Biggers* (1972), 409 U.S. 188, 196-97, 34 L. Ed. 2d 401, 409-10, 93 S. Ct. 375, 380-81.

The due process analysis has two steps. First, the defendant must prove that the confrontation was so unnecessarily suggestive and conducive to irreparable misidentification that he was denied due process of law. If the defendant meets his or her burden, the State then has the burden of establishing that under the totality of the circumstances, the identification, made under suggestive circumstances, is nonetheless reliable. *Manson v. Brathwaite* (1977), 432 U.S. 98, 116, 53 L. Ed. 2d 140, 155, 97 S. Ct. 2243, 2254; *People v. Williams* (1987), 118 Ill. 2d 407, 515 N.E.2d 1230.

The factors to be considered in determining reliability include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated [by the witness] at the confrontation, and the [length of] time between the crime and the confrontation." *Brathwaite*, 432 U.S. at 114, 53 L. Ed. 2d at 154, 97 S. Ct. at 2253, citing *Neil v. Biggers*, 409 U.S. at 199, 34 L. Ed. 2d at 411, 93 S. Ct. at 382. See also *Manion*, 67 Ill. 2d at 571.

■ Applying these principles to the instant case, we find that the facts tend to show that the one-on-one showup encounter was accidental. Mr. Confray testified that he had a clear view of the offender once the mask was no longer covering the offender's face. Further, Mr. Confray stated that he was concentrating on the defendant during the time he was being transported to the closet. He described the defendant's clothing, his gym shoes, and his body build. Finally, no more than an hour transpired between the conclusion of the home invasion and the confrontation at the hospital.

Although the United States Supreme Court has not considered a case of accidental pretrial encounter, Illinois courts which have considered this issue hold that "[a]n identification based upon an accidental encounter, where unprompted and positive, is not an impermissible showup and does not taint the in-court identification by the witness where the police neither arranged the chance encounter or suggestive circumstances." *People v. Lutz* (1982), 103 Ill. App. 3d 976, 982. See also *People v. Braxton* (1980), 81 Ill. App. 3d 808; accord *People v. Jones* (1983), 116 Ill. App. 3d 233; *People v. Brown* (1975), 32 Ill. App. 3d 182.

Accordingly, based on the foregoing precedent, we find that the showup identification under the present factual matrix satisfies the

*Brathwaite* and *Manion* elements. Thus, we conclude that the trial court did not err by refusing to suppress the witness' identification testimony and hold that the trial court's denial of defendant's motion to suppress was proper.

Defendant asserts that the State violated discovery by failing to disclose to the defense the identity of the police officers who would testify at trial as identification witnesses against him. Supreme Court Rule 412 makes the State's compliance with defendant's discovery request mandatory. (134 Ill. 2d R. 412; *People v. Burns* (1979), 75 Ill. 2d 282, 388 N.E.2d 394.) However, as argued by the State in the present case, the record on appeal evidences no filing of a discovery motion by defendant.

■ Even assuming a proper request was made, we find no error in the case at bar as the defendant here was made aware of the identifications prior to the witnesses' trial testimony. Recently, our supreme court opined that the State did not violate its discovery obligation when in response to three separate requests by defendant for witnesses, occurrence witnesses and identification witnesses, it refused to classify witnesses in those categories and only supplied a general reply. The court there held that Rule 412 does not permit defendant to demand such a categorization; nor is the State under an obligation to provide such a breakdown. See *People v. Jones* (1992), 153 Ill. 2d 155, 606 N.E.2d 1145.

Finally, although defendant now contends a discovery violation occurred in the trial below which was prejudicial to him, he failed to request a continuance or offer a motion to strike the testimony. The record reveals that the State gave defendant a witness list which included the names of the police officers and that the Hillside police report stated that two officers saw defendant exit the Confrays' car.

It was further disclosed during the trial below that no written police report existed as to one of the officers who identified defendant at the trial and neither was that particular officer the arresting officer. Further, the State pronounced it had no prior knowledge about one of the officer's notes which was first mentioned during the trial. Yet, upon learning about these notes, the court ordered that they be produced and given to defendant.

Accordingly, based on the foregoing, we find no discovery violation occurred and affirm on this issue.

■ Defendant next contends that he was denied a fair trial and prejudiced where the prosecutor hit the bat on a courtroom rail during closing argument as an example of how the defendant slammed the bat on Mr. Confray's head. He also argues prejudice because he was transported in handcuffs in the presence of the jury.

We conclude that defendant has waived review of both issues regarding alleged incidents of prosecutorial misconduct. He failed to object on the record or raise the issues as error in his post-trial motion. See *People v. Richardson* (1988), 123 Ill. 2d 322, 528 N.E.2d 612.

■ Finally, we address defendant's contentions regarding sentencing. Initially, we note that during oral argument the State conceded that one of the two home invasion convictions is improper, and thus, two of the three extended-term sentences imposed on the home invasion convictions should be vacated. It also concedes the extended-term sentences on the lesser convictions for possession of a stolen motor vehicle and aggravated battery are improper and should be vacated. Accordingly, we hold that one of two convictions for home invasion is reversed. Further, two of the three 60-year extended-term sentences imposed by the trial court, purportedly on three home invasion convictions, are vacated. We also vacate the extended-term sentences on the less serious offenses of possession of a stolen motor vehicle and aggravated battery.

The State does not concede that the extended-term sentences for the remaining home invasion conviction and armed robbery convictions are improper. Nor does it agree that a new sentencing hearing is required on the basis that the trial court improperly failed to consider defendant's rehabilitation potential and looked to the number of convictions, albeit some improper, in sentencing defendant. We disagree.

■ First, we note that the record is unclear as to the trial court's basis for imposing extended-term sentences against defendant for the class of the most serious convictions. The Unified Code of Corrections provides, in pertinent part, that "[a] judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized *** for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present." (730 ILCS 5/5—8—2 (West 1992).) Section 5—5—3.2 provides that a court may sentence a defendant to an extended-term sentence where he was "convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" (730 ILCS 5/5—5—3.2(b)(2) (West 1992)), or where he was convicted of any felony committed against a person 60 years of age or older at the time of the offense (730 ILCS 5/5—5—3.2(b)(4)(ii) (West 1992)).

Because the trial court did not articulate its basis for imposing the extended-term sentences in the first instance and because of the improper imposition of extended-term sentences on the less serious

offenses, we believe a new sentencing hearing is warranted. We decline to exercise our authority to further modify the sentences in light of the confusion surrounding defendant's convictions and sentences in this case and in light of the magnitude of errors committed during the sentencing hearing.

Accordingly, we remand this matter and direct the trial court to conduct a new sentencing hearing. Because of our disposition of this matter and because it is remanded for a new sentencing hearing, we do not address defendant's contention that the trial court abused its discretion by failing to consider certain mitigating factors concerning him. We note, however, that on remand, the trial court shall consider the statutory guidelines and mandates.

Based on the foregoing, we recapitulate as follows:

(1) defendant's conviction for one count of home invasion is reversed;

(2) defendant's convictions for two counts of home invasion, two counts of armed robbery, one count of possession of a stolen motor vehicle and one count of aggravated battery are affirmed;

(3) defendant's extended-term sentences for the less serious offenses of possession of a stolen motor vehicle and aggravated battery convictions are vacated and the trial court is to determine the proper sentences to be imposed thereon on remand; and

(4) defendant's extended-term sentences for the two counts of home invasion and the two counts of armed robbery are to be revisited by the trial court, taking into consideration all aggravating factors, including a determination as to whether the factors pursuant to section 5—5—3.2 of the Code are present, and all mitigating factors as well.

Affirmed in part; reversed in part and remanded for a new sentencing hearing.

BUCKLEY and O'CONNOR, JJ., concur.