THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY ROBINSON, Defendant-Appellant.

First District (5th Division)    No. 1—92—1479

Opinion filed December 22, 1994.

Rita A. Fry, Public Defender, of Chicago (Lester Finkle, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee G. Goldfarb,

Christine Cook, and Thomas J. Darman, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Following a jury trial, the defendant, Anthony Robinson, was found guilty of armed robbery. Pursuant to the Habitual Criminal Act (Ill. Rev. Stat. 1989, ch. 38, par. 33B—1 *et seq.* (now 720 ILCS 5/33B—1 *et seq.* (West 1992))), the trial court sentenced him to a term of natural life without the possibility of parole. Defendant appeals his conviction and sentence.

The issues presented for review are (1) whether the trial court abused its discretion by admitting "other crimes" evidence to demonstrate *modus operandi*, (2) whether the State proved defendant guilty of armed robbery beyond a reasonable doubt, (3) whether the Habitual Criminal Act is unconstitutional, and (4) whether the State satisfied the requisite burden of proof to have defendant sentenced pursuant to the Habitual Criminal Act.

We affirm.

BACKGROUND

At trial, Geneva Brown testified that, on March 24, 1990, she lived at 7933 South Champlain, in Chicago and that she co-owned a 1986 Chevrolet Celebrity automobile with her daughter. After a day of shopping, the victim backed her car into her garage. As she was gathering her groceries from the back seat of her vehicle, a man stood behind her and put his hand over her mouth and around her neck. The victim said, "[S]top playing with me." The man responded, "[B]itch, I'm not playing with you." The man spun the victim around.

The offender, who was wearing a ski mask and holding a knife with a white handle, started pushing the victim. He then knocked her to the ground and started hitting her on her head. This encounter took place towards the rear of the victim's car. The defendant told her that he would beat her to death.

He groped her bosom, ran his hands up her girdle and arm sleeves, and then asked her the location of her money. She pointed to the car. He then went to the car, grabbed her purse, took at least $10, yanked the victim's four diamond rings from her fingers, took her garage door opener, opened the garage, and ran away. The victim noticed that the man was not wearing gloves and that he touched her car. The victim described her assailant as being a black male, 175 pounds, 5 feet 10 inches tall, and wearing a white hood with black spots. Defendant was ultimately taken to the police station and arrested.

A Chicago police officer testified that on March 31, 1990, he had defendant, who was in lockup, place his fingerprints on a fingerprint card. A Chicago police department evidence technician also testified that he lifted fingerprint number 19 from the left rear door of the victim's automobile. A latent fingerprint examiner testified that after comparing latent fingerprint number 19 with the eighth fingerprint depicted on defendant's fingerprint card, she believed that both impressions were made by the finger of the same man.

The State filed a motion *in limine* seeking to admit evidence of other crimes at defendant's jury trial. The State sought admission of "other crimes" evidence testimony from Lillie Barber[1] (Barber) and a prior victim named Eloise Laws (Laws). The trial court allowed Barber's testimony for common scheme and design, but denied any testimony from Laws.

Barber testified that on March 16, 1990, the defendant was wearing a mask when he accosted her in her garage. She tore off his mask and tried to fight him. Defendant pulled a switchblade out of his pocket, ordered Barber to lie on the ground, hit her, pulled down her pants, invaded her pockets, took her money, and announced that he was going to have sex with her. Barber replied that she was diseased and defendant, while hitting her, told her that she could do other things.

Barber then told defendant that her garage mate would soon return and that he should leave. The defendant then put Barber's coat over her head, patted on her person, and fled. Barber got up, ran to the house, and told someone to call the police. She identified defendant in a lineup on March 31, 1990.

Barber told the police that her assailant was a black male, about

---

[1]In *People v. Robinson* (*Robinson I*), the defendant in the case *sub judice* was found guilty, after a jury trial, of committing the offense of armed robbery and armed violence. Lillie Barber was the victim and principal witness in *Robinson I*. Pursuant to the Habitual Criminal Act, the trial court sentenced the defendant to natural life imprisonment. On appeal, the Appellate Court, First District, Fourth Division, in an unpublished order (*People v. Robinson* (1st Dist. 1993), No. 1—91—3239 (unpublished order under Supreme Court Rule 23)) found that the trial court did not abuse its discretion in admitting "other crimes" evidence. However, the appellate court reversed and remanded the case for a new sentencing hearing, holding that (1) the proof of prior convictions required for an enhanced sentence must meet a reasonable doubt standard and (2) the proof was insufficient to establish beyond a reasonable doubt that a previous conviction was a Class X felony. On December 1, 1993, leave to appeal *Robinson I* was granted by the Illinois Supreme Court (*People v. Robinson* (1993), 153 Ill. 2d 567).

30 years old, 5 feet 6 inches tall, with a dark complexion and no visible scars. He was wearing blue jeans and a white knit face mask.

Following trial, the jury found defendant guilty of armed robbery. At the sentencing hearing, the State presented certified copies of 1978 and 1984 convictions for armed robberies. The State also asked the court to take judicial notice of defendant's conviction in *Robinson I*. The State asked that defendant be sentenced as an habitual criminal pursuant to section 33B—1 of the Illinois Criminal Code of 1961 (now 720 ILCS 5/33B—1 (West 1992)).

Defendant, at the sentencing hearing, contended that the sentence for the 1984 conviction was not for armed robbery.[2] The trial court ruled that the certified copies of convictions in this case were sufficient and adjudged that defendant was an habitual criminal under the Habitual Criminal Act. Ill. Rev. Stat. 1989, ch. 38, pars. 33B—1, 33B—2 (now 720 ILCS 5/33B—1, 33B—2 (West 1992)).

OPINION

I

Defendant contends that the trial court abused its discretion by admitting "other crimes" evidence to demonstrate *modus operandi*. Specifically, defendant asserts that the admission of defendant's prior armed robbery of Barber (*Robinson I*) was neither probative nor substantially similar to identify or establish *modus operandi* and that such information inflamed the jury.

We disagree.

The State contends that the common law record does not reveal that a post-trial motion on other crimes had been made and, as a result, the defendant has waived his contention that the trial court erred in admitting evidence of other crimes. However, the State does acknowledge that the record of proceedings at defendant's sentencing hearing indicates that defendant indeed filed both a motion and a *pro se* motion for a new trial, albeit the record does not clearly indicate whether the "other crimes" evidence issue was included in such motion. We cannot conclude that a motion on other crimes was not filed. We elect to consider the "other crimes" evidence issue.

The admissibility of evidence at trial is a matter within the trial court's discretion, and that court's decision may not be overturned on

---

[2]In *People v. Robinson* (1st Dist. 1993), No. 1—91—3239 (unpublished order under Supreme Court Rule 23), on appeal, the Appellate Court, First District, Fourth Division wrote: "Defendant's counsel told the court that the alleged conviction in 1984 showed a conviction for armed robbery and, according to defense counsel, the conviction was actually for robbery."

appeal absent a clear abuse of that discretion. (*People v. Illgen* (1991), 145 Ill. 2d 353, 364, 583 N.E.2d 515.) And, an abuse of discretion will be found only where the trial court's decision is arbitrary, fanciful, unreasonable, or where no reasonable person could take the view adopted by the trial court. *Illgen*, 145 Ill. 2d at 364.

Further, it has been well established that evidence of other offenses is inadmissible for the purpose of demonstrating a defendant's disposition or propensity to commit crime. (*Illgen*, 145 Ill. 2d at 364.) However, such evidence is admissible to prove *modus operandi*, intent, identity, motive, or absence of mistake. *Illgen*, 145 Ill. 2d at 364-65.

■ Here, both victims were elderly women (Brown, 69, and Barber, 58), both victims lived and were robbed at knifepoint in Chatham, the attacks of both women occurred within eight days of each other, both women were attacked upon arriving home, both women were attacked in their garages when they got out of their cars, the perpetrator used a knife to threaten both women, both victims were forced to the ground during their attacks, the offender took money and/or jewelry from each victim, and the offender wore a white mask or hood which covered his entire face except his eyes and mouth. Moreover, Barber pulled off the offender's mask and later positively identified defendant as the offender.

These similarities, coupled with the corroborative fact that defendant's fingerprint was found on Brown's car, all supply the requisite earmarks to indicate that "other crimes" evidence was properly admitted and the trial court did not abuse its discretion.

## II

Defendant also contends that the State did not prove him guilty of armed robbery beyond a reasonable doubt. Specifically, defendant asserts that the State failed to prove him guilty of armed robbery beyond a reasonable doubt because the complaining witness did not identify him and the State only relied on "other crimes" evidence and a fingerprint. We disagree.

The relevant inquiry in determining whether a defendant was proven guilty of an offense beyond a reasonable doubt is

> "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 453.

Further, the proof beyond a reasonable doubt standard applies in

all criminal cases, whether the evidence is direct or circumstantial. (*People v. Stengel* (1991), 211 Ill. App. 3d 337, 346, 570 N.E.2d 391.) As the United States Supreme Court noted in *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) The court elaborated by pointing out that "upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." (Emphasis in original.) *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789. See *People v. Phillips* (1989), 127 Ill. 2d 499, 509-10, 538 N.E.2d 500.

■ The State's evidence, when viewed in a light most favorable to the prosecution, established that on March 16, 1990, defendant attacked and robbed Barber in her garage. Defendant wore a white mask over his face and Barber pulled the mask from defendant's face and subsequently identified defendant as her attacker. Moreover, defendant told Barber that he was going to have sex with her.

The State also demonstrated that, on March 24, 1990, as the victim in the instant case was in her garage, defendant robbed her after struggling with and hitting her. Defendant also groped her bosom and put his hands up her girdle and sleeves. The victim saw defendant touch her car and defendant's fingerprint matched the print which an evidence technician had lifted from the crime scene.

The similarities of these attacks established *modus operandi* and, consequently, defendant's identity as the victim's attacker. This evidence was corroborated by one of defendant's fingerprints, which was found near the rear driver's side of the victim's car. The evidence established defendant's guilt of armed robbery beyond a reasonable doubt.

### III

Defendant next contends that the Habitual Criminal Act is unconstitutional, because it violates due process of law and the eighth amendment in that it requires the imposition of a natural life term without regard to mitigating factors justifying a lesser sentence, and it violates the separation of powers doctrine of the Illinois Constitution and the eighth amendment because it vests too much discretion in the prosecutor to invoke the statute.

We disagree.

■ These arguments have been addressed by this court repeatedly and rejected in the past. (See *People v. Dunigan* (1994), 263 Ill. App.

3d 83, 90, 635 N.E.2d 522; *People v. Gaston* (1994), 259 Ill. App. 3d 869, 877, 631 N.E.2d 311. See also *People v. Levin* (1993), 157 Ill. 2d 138, 148, 623 N.E.2d 317.) Thus, the constitutionality of the Habitual Criminal Act is well settled.

## IV

Defendant's final contention as indicated in his brief is that he was wrongfully sentenced to life imprisonment because the State failed to prove his two prior Class X felony convictions beyond a reasonable doubt. We disagree.

The Habitual Criminal Act (Ill. Rev. Stat. 1989, ch. 38, par. 33B—1) provides a sentence of natural life for individuals convicted of three Class X felonies within a 20-year period. The statute has been interpreted to require the State to prove the material allegations in its petition beyond a reasonable doubt. *People v. Davis* (1990), 205 Ill. App. 3d 865, 563 N.E.2d 869; *People v. Walton* (1992), 240 Ill. App. 3d 49, 59, 608 N.E.2d 59.

At the sentencing hearing, the record indicates that the State made the following remarks to the court:

> "We have certified copies of convictions in 78—425, armed robbery, 78—426, armed robbery, 78—427, armed robbery, 78—443, which is an attempt rape, 84—133 which is an armed robbery, as well as the case 90—133 which is also an armed robbery. Your Honor, we would add to that 90—9799, which is an armed robbery. A jury found him guilty of his fifth class X felony on February 13th. We would ask the court to sentence him accordingly to natural life as an habitual criminal."

In response, defendant's counsel stated:

> "Judge, in response, and as counsel did indicate to me that she would be referring to previous motions made by the State requesting the court to sentence Mr. Robinson under the habitual criminal provision of chapter 38 ***. As the court recalls Mr. Robinson disputed the 1982 matter. That even though the State presented what appears to be a certified copy of conviction referring to a class—what would be—what would be known as a class X offense *** we would renew our argument that was a sentence that on that charge would not qualify for the habitual criminal statute. [T]hat it would not be considered a class X offense, that it was not an—I believe it was contended it was an armed robbery. We contend that it was not."

That transcript of the proceedings also reflect later colloquy as follows:

> "THE COURT: As I understand it now, we're standing in the one conviction that is a contention, the 1982. There are still two prior Class X felony convictions.

MS. SANDERS: It would be the two in '74 as well as the one form [*sic*] this past, summer, your Honor. I believe that would make this one the fourth instead of the fifth even if he were to— although we do have a certified conviction.

THE COURT: The statute only requires two.

MS. SANDERS: Correct, Judge.

THE COURT: Is the defense in agreement with that?

MR. HEENAN: No, Judge, we are not. Though they have presented certified copies on the previous court date, I would not indicate any agreement as to whether or not that provision is constitutional, whether or not—

THE COURT: I'm not asking that.

MR. HEENAN: —whether or not these old convictions—as the Court recalls the Class X sentencing, as I recall it, and maybe, in fact, we are referring to a time period before—prior to the enactment of the Class X legislation. So I'm not agreeing that this somehow would—these convictions would somehow qualify ***.

* * *

THE COURT: Therefore, the next question is whether or not your client, Mr. Anthony Robinson, fits into the guidelines and standards set forth. I would find that there were at least two prior convictions before the conviction on the case before me. And as a result—actually as the State has pointed out, they are all armed robberies or what would be Class X. And as a result, it does apply.

Mr. Robinson, is there anything you wish to say before I sentence you?

DEFENDANT: No.

THE COURT: Pursuant to the provisions of Chapter 38, Section 33(b)—1, as an habitual criminal, I hereby sentence you to natural life without parole, I enter judgment on the verdict and on the sentence."

Section 33B—2 of the Habitual Criminal Act defines the procedure to be followed when petitioning the court under the Act. Section 33B—2(a) provides in part that "the prosecutor may file with the court a verified written statement signed by the State's Attorney concerning any former conviction of an offense set forth in section 33B—1 rendered against the defendant." (Ill. Rev. Stat. 1989, ch. 38, par. 33B—2(a) (now 720 ILCS 5/33B—2(a) (West 1992)).) Section 33B—2(b) provides in part that "[a] duly authenticated copy of the record of any alleged former conviction of an offense set forth in section 33B—1 shall be prima facie evidence of such former conviction." (Ill. Rev. Stat. 1989, ch. 38, par. 33B—2(b) (now 720 ILCS 5/33B—2(b) (West 1992)).) Moreover, section 33B—2(c) provides that "[a]ny claim that a previous conviction offered by the prosecution is not a former

conviction of an offense set forth in Section 33B—1 because of the existence of any exceptions described in this Act, is waived unless duly raised at the hearing on such conviction, or unless the prosecution's proof shows the existence of such exceptions described in this Act." Ill. Rev. Stat. 1989, ch. 38, par. 33B—2(c) (now 720 ILCS 5/33B—2(c) (West 1992)).

The State contends in the instant case that the burden of proof in a hearing under the Act is a preponderance of the evidence. This argument by the State has been considered and repeatedly rejected (*Davis*, 205 Ill. App. 3d at 872; *Walton*, 240 Ill. App. 3d at 59.) We note that, in *Davis*, the court wrote, "[a]lthough there is some uncertainty on the question, we believe the better view is that the State must prove the material allegations of its petition beyond a reasonable doubt. [Citations.]" *Davis*, 205 Ill. App. 3d at 872.

The State also argues that the Illinois Supreme Court's decision in *People v. Williams* (1992), 149 Ill. 2d 467, 599 N.E.2d 913, overturned a line of appellate court cases wherein the appellate courts had erroneously held that the People were required to prove beyond a reasonable doubt a defendant's prior conviction which established his eligibility for sentencing to a Class X term. (730 ILCS 5/5—5—3(c)(8) (West 1992).) In *Williams* the Illinois Supreme Court did determine that *People v. Casey* (1948), 399 Ill. 374, 77 N.E.2d 812, was the genesis for an erroneous line of case law holding the reasonable doubt standard applied for enhancement of a sentence to a Class X felony. The State points out that the *Williams* court recognized that the mandatory Class X provision is not a part of the trial. Rather, it is a sentencing provision that operates after the guilt phase of the trial has been completed. The State argues that our appellate courts have blindly, and in lockstep fashion, relied on *Casey* to inject the reasonable doubt quantum of proof into the present Habitual Criminal Act. Ill. Rev. Stat. 1989, ch. 38, par. 33B—1 (now 720 ILCS 5/33B—1 (West 1992)).

The State points out that *Williams* states:

"[T]he point of when prior convictions are introduced, either at sentencing or at trial, [is] determinative of any burden of proof the State may have." (Emphasis omitted.) *Williams*, 149 Ill. 2d at 483.

The State further argues that nowhere in the Act does the legislature require proof beyond a reasonable doubt; rather, the legislature has created a scheme whereby defendant has the burden of affirmatively rebutting the People's proof. This scheme, the State argues, is incompatible with the notion of the presumption of innocence and, consequently, proof beyond a reasonable doubt.

We note that the *Williams* court distinguished the procedures for sentencing under the Class X provision provided for in section 5—4—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—4—1 (now 730 ILCS 5/5—4—1 (West 1992))) from evidentiary procedures provided for under the Habitual Criminal Act (Ill. Rev. Stat. 1989, ch. 38, pars. 33B—1, 33B—2 (now 720 ILCS 5/33B—1, 33B—2 (West 1992))). (*Williams*, 149 Ill. 2d at 480-81.) The *Williams* court wrote, *inter alia*, that "[t]he Class X provision of the Unified Code simply provides no comparable evidentiary procedures. A defendant does not have to be 'adjudged' a Class X offender to be sentenced under the Class X provision." *Williams* 149 Ill. 2d at 480-81.

The Illinois Supreme Court has not issued an opinion which clearly holds that the State is required to prove a defendant's prior convictions beyond a reasonable doubt in order to have a defendant adjudged an habitual criminal under the Act. However, in *Levin*, the court wrote regarding the double jeopardy issue in the case:

> "Finally, we deem it significant that the State's burden of proof for purposes of habitual-criminal sentencing may be satisfied by the presentation of certified records of the defendant's prior convictions. (See *People v. Davis* (1983), 95 Ill. 2d 31.) Notably, such proof is developed outside of the courtroom. As a result, the proceeding does not involve the same degree of adversarial testing characteristic of the evidentiary phase of trial. ***
>
> *** The legislature has fashioned the habitual-criminal sentencing proceeding to be less formalized than a trial. Indeed, the paucity of due process protections at sentencing supports the conclusion that the legislature has deemed the defendant's interests at this stage of the proceedings to warrant fewer of those protections than at trial." *People v. Levin* (1993), 157 Ill. 2d 138, 153, 623 N.E.2d 317.

Relative to the quantum of proof required under the Habitual Criminal Act, we have studied the provisions of the Act, many decisions of our appellate courts, particularly *Davis* and *Walton*, and relevant statements in some Illinois Supreme Court opinions, particularly *Williams* and *Levin*. We conclude that defendant is correct in his contention that under the Act the State must prove the requisite prior convictions beyond a reasonable doubt.

The State next contends that defendant's prior Class X convictions were proved beyond a reasonable doubt in the instant case because the defendant failed to rebut the accuracy of the certified copy of defendant's 1984 Class X conviction for armed robbery. In the instant case, the State presented certified copies of convictions in 1978 and 1984. The transcript of the sentencing proceedings indicates that Mr. Robinson's attorney stated to the court that the defendant

disputed the 1982 matter and argued that the sentence on that charge was not for a Class X offense, because it was not an armed robbery conviction. The defense counsel also objected to the use of certified copies. The trial court considered the certified copies of convictions and ruled that the certified copies of convictions which the court considered were all armed robberies or what would be Class X and that Mr. Robinson fit into the guidelines and standards of the Act.

The Act provides that a "duly authenticated copy of the record of any alleged former conviction of an offense set forth in Section 33B—1 shall be prima facie evidence of such former conviction." (Ill. Rev. Stat. 1991, ch. 38, par. 33B—2(b) (now 720 ILCS 5/33B—2(b) (West 1992)).) *Prima facie* evidence is "[e]vidence which, if unexplained or uncontradicted, is sufficient to sustain a judgment in favor of the issue which it supports, but which may be contradicted by other evidence." Black's Law Dictionary 1190 (6th ed. 1990).

The sufficiency of the evidence regarding this issue must be viewed by this court in a light most favorable to the prosecution, and the sentencing court's determination must be upheld if any rational trier of fact could find that the People proved this issue beyond a reasonable doubt. *People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 461.

During the sentencing hearing, defendant's lawyer contended that his 1984 conviction was not for a Class X felony. However, no evidence to rebut the *prima facie* documentary evidence was presented to support defendant's contention.

The defendant relies on *People v. Gill* (1988), 169 Ill. App. 3d 1049, 523 N.E.2d 1239, for the proposition that certified copies of convictions alone are insufficient to support the imposition of a term of natural life imprisonment. In *Gill*, the court stated that under the Act, prior convictions must be supported by evidence that persons named in the records and the defendant are identical. The State argues that the defendant's reliance on *Gill* is misplaced because the defendant's identification was at issue in that case, while in the instant case the defendant did not contest the identity of the individual named in the certified convictions. We agree that *Gill* is inapposite. Identity is not the issue in the instant case. The accuracy of the conviction of armed robbery in the certified record of conviction is the issue in the instant case.

■ The State relies on *People v. Washington* (1984), 125 Ill. App. 3d 109, 465 N.E.2d 666, for the proposition that the defendant waives his right to challenge the validity of his prior convictions where the State established a *prima facie* case using certified copies of the convictions and the defendant offered no evidence to rebut the presumption. In essence, the defendant in the instant case offered no

evidence because the bare contention by defendant that he was not convicted of an armed robbery, notwithstanding the certified copy of the record of conviction, was not evidence in rebuttal. Accordingly, we hold that the record of certified convictions for the armed robberies in this case was sufficient to support the adjudication of the trial court under the Habitual Criminal Act.

The judgment of the trial court is affirmed.

Affirmed.

MURRAY[3] and GORDON, JJ., concur.

---

[3]Justice Murray concurred in the above opinion prior to his retirement.