THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TYRONE SMITH, a/k/a Tyrone Dougherty, Defendant-Appellant.

First District (1st Division)   No. 1—92—0133

Opinion filed July 24, 1995.

Michael J. Pelletier and Ann C. McCallister, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Gunta Z. Hadac, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Defendant was charged with two counts of armed robbery and unlawful use of a firearm by a felon. The State nol-prossed the unlawful use charge. Defendant was found guilty in November 1988, but granted a new trial based on the unconstitutionality of the statute allowing the State to demand a jury trial. Defendant was tried a second time in December 1990. The trial court declared a mistrial after the jury was unable to return a verdict. Defendant was tried for a third time in November 1991 and found guilty. Prior to the first trial, defendant's motion to suppress pretrial identification was denied. Defendant now appeals.

On appeal, defendant contends that: (1) the admission of pretrial identification evidence denied him due process; (2) the trial court erred in refusing his requested lesser-included-offense instruction; (3) the trial court erred in allowing the State to elicit a prior consistent statement; (4) the trial court erred in entering judgment on two counts of armed robbery where the convictions were based on a single act; and (5) the Habitual Criminal Act (720 ILCS 5/33B—1 et seq. (West 1992)) is unconstitutional.

In the late afternoon of January 10, 1987, the Lake Cleaners was robbed. Ms. Judy Oh and Mrs. Myong Oh owned the cleaners and were present at the time of the robbery. Mrs. Oh did not testify or give any statements because she does not speak English. The same witnesses testified at defendant's pretrial motion to suppress identification hearing that testified in each subsequent trial.

Judy Oh testified that at approximately 4:55 p.m., two black men entered the cleaners. They were middle-aged and one was wearing a blue wool coat. She saw their faces when they came through the door. They were not wearing masks or scarves around their faces. After the two entered, they walked toward the counter. She looked at their faces as they approached the counter. When they came up to the counter, she was still looking at their faces. As one walked to the counter, he covered his face with his coat. She asked what she could do and they said open the register. She then saw one of them pull a gun. This man told her not to look at his face and if she did he would shoot her. She looked to the floor and did not look at his face again.

The man with the gun jumped over the counter and took Mrs. Oh's purse, which was being used in place of the register which was broken.

Oh described the gunman as having a mustache and beard and wearing a blue knee-length wool coat. The other man was standing next to him, looking out the window. She could not remember what he was wearing. She stated she was paying attention to the gunman and not the second man. She testified she saw the second man but could not describe him well; he had curly hair, a little mustache, was not that tall, and was middle size. After the robbery, the two men ran out of the cleaners followed by Oh and her mother. She observed them get into an old green sports car.

When police arrived, she described the offenders and their clothing. She also described their car. According to her, the police told her they were going to transport her to a gas station and she was supposed to "describe [whether] these two people are the right ones or not." She denied hearing any conversations between any police officers. She stated she knew they were talking but did not pay attention to them.

On the way to the gas station, the police told her she was not to exit the car. She was to look through the window and state whether the apprehended individuals were the robbers or not. When they arrived at the gas station, she immediately observed the car the robbers fled in. She also identified the gun. The officer had her look at two individuals and told her to identify them if she could. She testified she positively identified both men. Oh stated she wears glasses but only sometimes and they do not help her see any better.

At defendant's third trial, Oh's testimony was less detailed than that given at the pretrial hearing; her testimony became less detailed at each subsequent trial.

She testified two guys came in the cleaners. She saw them come through the door and stated they looked strange. One stared out the window and the other pulled a gun and pointed it at her. On cross-examination, she testified they both walked to the counter and were facing her. Defendant was wearing a beige jacket which was all she could remember. She could not see defendant very close. The gunman had on a blue knee-length coat. The gun was silver metal with two barrels. When he pulled out the gun, he told her not to look at him. She testified that prior to his statement, she looked at him "very quick."

She identified the two men at the gas station as the robbers and distinguished who was the gunman. It was not defendant. She testified that in 1987 she recognized the offenders' faces "pretty much

clear," but at this third trial, it was hard to identify them. She stated she did not remember in her own mind, at this trial, the faces of the men.

Mr. Rudy Lopez also testified on behalf of the State. On the day in question, he was working in an apartment above the cleaners. He left the apartment to run an errand and walked past the cleaners. When he was approximately two doors past the cleaners, he passed a black male. Lopez testified he looked directly at the man's face. Lopez identified defendant in court. Lopez stated the man was wearing a blue coat. After he passed the man, he looked back at him again and saw him looking in the cleaners, "sort of like casing the place." Lopez described defendant's actions as moving his head from side to side. When he looked back the second time, Lopez only observed the side of defendant's face. Lopez had never seen the man before and stated he was "a strange suspicious looking person."

When he returned from his errand, a squad car was in front of the cleaners and Oh told him she had been robbed. Lopez told the officer about the man. The officer asked Lopez to go with him and Oh to see if they could identify two individuals who other officers were detaining. When the police car arrived at the gas station, Lopez saw defendant and identified him. Lopez stated both he and Oh identified defendant at the same time. Lopez denied that the officers told the witnesses who to identify or suggested that the individuals they were going to view were the robbers. The officers did not direct the witnesses who to identify, they "just said look at these men and see if you can identify anybody."

On cross-examination, Lopez testified he did not know the color of defendant's pants and recognized him only by his pea coat and face. When he identified defendant at the gas station, he told the police defendant had on a different coat than what he was wearing in front of the cleaners.

Lopez's third trial testimony was basically the same although less detailed. At the third trial, he stated he almost bumped into defendant outside the cleaners. He admitted he did not see the gunman in the cleaners and did not witness the robbery. On cross-examination he testified he saw the defendant's face when he walked up to the cleaners. However, when he spoke to the police he gave only a description of defendant's jacket not of defendant. Nonetheless, when he identified defendant at the gas station, it was by his face and not his clothing.

Officer Buckner testified on behalf of the State. He was a patrolman and received an assignment of an armed robbery on Webster. At the scene, he spoke to Oh and Lopez separately. Oh told him two

men came into the cleaners with a gun and took money from her and her mother. She described the men to the officer. The description he radioed was two black males with dark clothing, driving a green sports car.

The officer learned that two individuals had been detained and advised the witnesses he would like them to look at the individuals. While at the cleaners, a detailed description of the suspects was broadcast. Buckner denied hearing the broadcast and stated he did not believe the witnesses heard it. The broadcast detailed that two suspects were being held, one was wearing brown pants and a checkered shirt, the other was wearing a black leather jacket, red and blue checkered shirt, blue pants and brown shoes. Officer Buckner transported Oh and Lopez to the gas station. He denied giving them a specific clothing description or any other information about the individuals' appearance. He only discussed what was going to take place. Buckner told Oh and Lopez they would view two possible suspects and they should be "certain and sure before they made any response." He never suggested that the police had the individuals who committed the robbery.

When the police and witnesses arrived at the gas station, approximately 15 to 20 minutes after the robbery, Buckner and his partner got out of their car. Buckner went over and spoke with Officer Erickson. At this time, the suspects were seated in the back of a police car which was about 15 feet from his own car. Erickson then asked the suspects to exit the vehicle. Officer Buckner returned to his car and through the open window asked the witnesses if "they saw the people who had robbed them." Both Oh and Lopez said yes and both positively identified the two suspects. Oh identified both men and Lopez identified only defendant. Buckner's testimony at the third trial, as with other witnesses, was less detailed than prior testimony.

Officer Barbara Erickson (Midona) was the officer who apprehended the suspects at the gas station. She testified that at approximately 4:55 p.m., she and her partner monitored a radio broadcast that an armed robbery had occurred on Webster. The broadcast described the suspects as two black males in a green Camaro. They proceeded in their patrol car toward the area. When the officers arrived at the corner of La Salle and Clark they stopped for a red light. At this time, they observed a green Camaro with two black male occupants. According to Erickson, the car cut quickly across a lane of traffic committing a traffic violation. The car also did not have license plates. Erickson pulled in behind the Camaro because of the turning violation, the lack of plates, and the fact the car and its occupants matched the description of the robbery suspects.

Both occupants of the Camaro got out. Erickson radioed in and requested assistance. She and her partner exited their vehicle and her partner, Officer Delgado, detained the driver. Defendant started walking towards a pay phone on the other side of the station and she followed him. She observed defendant throw something into a snow bank. When she retrieved the item, she determined it was a Derringer gun. The officer placed defendant under arrest and held the suspects until the witnesses arrived and identified them.

Detective Gildea took a statement from defendant. According to the detective, defendant told the police he was picked up by the codefendant sometime after the robbery and was not present during its commission. However, after being advised that witnesses had identified him, defendant stated he had been with codefendant at the scene.

Darren Bowden, a public defender, testified on defendant's behalf. He stated that at the hearing on defendant's motion to suppress identification, he was seated next to defendant at counsel table and Oh twice identified him as the gunman.

Defendant first contends that the trial court violated his due process rights by admitting pretrial identification evidence. He claims he is entitled to a new trial.

Defendant argues the showup was impermissibly suggestive and highly unnecessary because the police told the witnesses they were going to observe suspects who fit their descriptions. When the witnesses observed the suspects, the suspects were standing outside a police car with additional police and police vehicles "flanking" them. An immediate showup was not necessary because the police had arrested defendant and could have conducted a lineup. The State asserts that an immediate showup was necessary because the police were looking for armed robbery suspects within minutes of the robbery. They needed to act promptly to determine whether the individuals being held were the robbers or whether they needed to continue their search.

■ We must determine whether the trial court's decision denying defendant's motion to suppress the identification evidence was manifestly erroneous. (*People v. Moore* (1994), 266 Ill. App. 3d 791, 640 N.E.2d 1256.) An immediate showup near the scene of a crime can be proper. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.) Only when a pretrial encounter resulting in an identification is "unnecessarily suggestive" or "impermissibly suggestive" so as to produce "a very substantial likelihood of irreparable misidentification" is evidence of that and any subsequent identification excluded under the due process clause. (*Moore*, 266 Ill. App. 3d at 796-97, 640 N.E.2d at 1260.) The decision whether to permit a showup identifica-

tion is based on an analysis of the following factors: " 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' " *People v. Poole* (1988), 167 Ill. App. 3d 7, 14, 520 N.E.2d 1017, 1021, quoting *People v. Manion* (1977), 67 Ill. 2d 564, 571, 367 N.E.2d 1313, 1317, quoting *Neil v. Biggers* (1972), 409 U.S. 188, 199, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382.

■ We find the showup was proper. In *People v. McKinley* (1977), 69 Ill. 2d 145, 153, 370 N.E.2d 1040, 1043, the supreme court held that a one-on-one showup was admissible even though the witness viewed the defendant from 20 feet away. It was in daylight, the original description was sufficiently accurate to allow police to pick defendant out of a group of 15 people, the witness unhesitatingly identified defendant, and the identification occurred within 30 minutes of the offense and four blocks away. In *People v. Lippert* (1982), 89 Ill. 2d 171, 188, 432 N.E.2d 605, 613, the supreme court held that a showup identification was sufficiently reliable to be admitted. In this case, one of the witnesses talked to the robber, both had ample time to view the robbers (several minutes), they provided a description, although somewhat general, which was reasonably accurate, and they independently identified defendant within 55 minutes of the robbery.

Similarly, in *People v. Poole* (1988), 167 Ill. App. 3d 7, 14-15, 520 N.E.2d 1017, 1021-22, the appellate court upheld an immediate showup near the scene of the crime where the witness saw the defendant in good light for several minutes, provided a detailed description of the suspect, and the identification was made approximately 30 minutes after the offense. The court found that the witness paid close attention to defendant's physical features, attire, and grooming and was quite certain of her identification.

Finally, in *People v. Johnson* (1994), 262 Ill. App. 3d 781, 792, 635 N.E.2d 827, 834, the court upheld the identification of a fleeing offender, finding that immediate showups are necessary to "facilitate the immediate release of an innocent suspect and allow the police to continue their search for a fleeing offender." In this case, police pursued offenders and returned them to the scene within minutes after the crime.

In the case before us, the facts demonstrate that the witnesses saw defendant in good light, had ample opportunity to view him, and did so with attention. Although the description of the police broadcast was general, the witnesses made positive identifications 15 to 20 minutes after the crime. Therefore, the trial court properly denied

defendant's motion to suppress identification and defendant is not entitled to a new trial.

Defendant's second contention is that the trial court erred in failing to give a lesser-included-offense instruction of theft. Relying on *People v. Jones* (1992), 149 Ill. 2d 288, 595 N.E.2d 1071, he argues that since he was charged with armed robbery he was entitled to the instruction. According to defendant, the basis for a theft conviction would be his obtaining control over stolen property. Based on the facts in evidence, the jury could reasonably conclude that codefendant picked defendant up after the robbery and gave him the gun and some of the proceeds. The fact defendant possessed only a portion of the proceeds demonstrates that whoever accompanied codefendant had the balance. If defendant were present at the robbery, it would be logical to conclude that he would have possessed a greater sum of money.

The State asserts that the evidence presented precludes a theft instruction. There was no evidence defendant knowingly obtained or exerted unauthorized control over the money. His statement to the police that he was picked up after the robbery was made to totally exculpate himself. This statement logically suggests defendant is not guilty of any crime. There was no evidence presented that defendant knew the money in his pocket was taken from the robbery and no evidence he knew the torn up checks were in the wad of money. Therefore, there was no evidence of the requisite mental intent for theft. Moreover, the State contends that the instruction was not required because there was no need for the jury to find a disputed factual element of armed robbery which was not required for theft. Finally, the error, if any, was harmless based on the overwhelming evidence against defendant.

■ It is well established that a criminal defendant may be entitled to a jury instruction on a less serious offense that is included in the offense he or she is charged with. (*People v. Bryant* (1986), 113 Ill. 2d 497, 502, 499 N.E.2d 413, 415.) Where there is some evidence in the record, if found credible by the jury, which would reduce the crime to a lesser offense, an instruction on the lesser offense should be given. However, defendant is not automatically entitled to an instruction once a lesser-included offense is defined. (*People v. Novak* (1994), 163 Ill. 2d 93, 108, 643 N.E.2d 762, 770.) The trial court must first examine the evidence adduced at trial and only if the "evidence would permit a jury rationally to find the defendant guilty of the lesser included offense and acquit him or her of the greater offense" should the instruction be given. (*Novak*, 163 Ill. 2d at 108, 643 N.E.2d at 770.) "[W]here 'the evidence is sufficient for a conviction on the

greater offense, it is not reversible error to instruct only as to that offense.' " *People v. McClellan* (1992), 232 Ill. App. 3d 990, 1008, 600 N.E.2d 407, 420, quoting *People v. Fonville* (1986), 158 Ill. App. 3d 676, 685, 511 N.E.2d 1255.

We find the instruction was not mandated because there is no evidence in the record to support the lesser-included-offense charge. No jury could rationally find defendant guilty of theft. Therefore, the trial court did not err in refusing the instruction.

■ Defendant's third contention is that the trial court committed prejudicial error when it allowed Officer Buckner to testify that Oh identified the gun at the gas station. This testimony constitutes a prior consistent statement and unduly bolstered Oh's testimony. Because she alone identified defendant as one of the robbers, she was a crucial witness to the State. According to defendant, the State used Oh's better memory of objects to enhance her weaker memory of defendant. Admission of this testimony was not harmless error because defendant's guilt depended almost entirely on Oh's testimony. Defendant admits he failed to object to the testimony at trial or in his posttrial motion, but requests that we address the issue on a plain error basis.

The State argues defendant has waived this argument. Even if defendant has not waived it, the trial court properly admitted the testimony because it fell within an exception to the hearsay rule: identification. According to the State, this exception is not limited to identifying physical characteristics of an individual but applies to any identifying element. The testimony was also admissible under the exception which shows the course of police investigation.

Defendant counters that the identification exception applies only to people, not to physical objects which defendant possessed.

We agree with the State that defendant waived the issue by failing to object at trial and in his post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 190, 522 N.E.2d 1124, 1132.) We also find that plain error is not available because the evidence is not closely balanced and the error, if any, did not deny defendant a fair trial. *People v. Lewis* (1995), 165 Ill. 2d 305.

■ Defendant's fourth argument is that he was improperly convicted of two counts of armed robbery based on a single act. The State agrees. Where multiple convictions are entered on a single act, we must vacate the superfluous judgments. (*People v. Williams* (1994), 265 Ill. App. 3d 283, 291, 638 N.E.2d 345, 351.) Accordingly, we remand to the trial court with instructions to correct the mittimus to reflect only one conviction of armed robbery and to vacate the other conviction.

■Defendant's final contention is that the Habitual Criminal Act is unconstitutional. Specifically, he argues that it violates the *ex post facto* and double jeopardy provisions of the Federal Constitution, that it violates article I, section 11, of the Illinois Constitution because it imposes a natural-life sentence without consideration of defendant's personal characteristics, that it violates the Illinois Constitution's separation of powers provision, and that it violates the single subject rule of the Illinois Constitution. Defendant acknowledges that these challenges have repeatedly been rejected by Illinois courts but urges us to reconsider. (See *People v. Taylor* (1984), 102 Ill. 2d 201, 209, 464 N.E.2d 1059, 1064 (natural life); *People v. Robinson* (1994), 268 Ill. App. 3d 1019, 1025-26, 645 N.E.2d 437, 442 (due process, natural life and separation of powers); *People v. Dunigan* (1994), 263 Ill. App. 3d 83, 90, 635 N.E.2d 522, 527-28 (*ex post facto*, double jeopardy, natural life, separation of powers and single subject); *People v. Gaston* (1994), 259 Ill. App. 3d 869, 877, 631 N.E.2d 311, 316 (*ex post facto*, natural life and due process); *People v. Knott* (1991), 224 Ill. App. 3d 236, 586 N.E.2d 479 (*ex post facto* and double jeopardy), *appeal allowed* (1992), 145 Ill. 2d 640, 596 N.E.2d 634, *vacated* (1993), 621 N.E.2d 611; *People v. Shriner* (1990), 198 Ill. App. 3d 748, 755-56, 555 N.E.2d 1257, 1263 (*ex post facto*, separation of powers and single subject); *People v. Glover* (1988), 173 Ill. App. 3d 678, 684-86, 527 N.E.2d 968, 972-73 (*ex post facto*, natural life and separation of powers); *People v. Westefer* (1988), 169 Ill. App. 3d 59, 65, 522 N.E.2d 1381, 1385-86 (*ex post facto*, natural life, separation of powers and single subject); *People v. Cannady* (1987), 159 Ill. App. 3d 1086, 1090, 513 N.E.2d 118, 120 (single subject); *People v. Morissette* (1986), 150 Ill. App. 3d 431, 442-44, 501 N.E.2d 781, 789-90 (*ex post facto*, natural life and separation of power); *People v. Hartfield* (1985), 137 Ill. App. 3d 679, 691, 484 N.E.2d 1136, 1144 (natural life); *People v. McNeil* (1984), 125 Ill. App. 3d 876, 881-84, 466 N.E.2d 1058, 1062-63 (*ex post facto*, natural life and separation of powers); *People v. Washington* (1984), 125 Ill. App. 3d 109, 116, 465 N.E.2d 666, 671 (separation of powers); *People v. Mason* (1983), 119 Ill. App. 3d 516, 524, 456 N.E.2d 864, 869 (*ex post facto*); *People v. Withers* (1983), 115 Ill. App. 3d 1077, 1087-91, 450 N.E.2d 1323, 1330-31 (separation of powers and natural life); see also *People v. Levin* (1993), 157 Ill. 2d 138, 148-58, 623 N.E.2d 317, 322-27 (double jeopardy not to bar State's second attempt to sentence defendant under Act).) We find no reason to reconsider.

Based on the above, we affirm defendant's conviction and remand to the circuit court to correct the mittimus.

Affirmed in part; remanded with directions.

WOLFSON and BRADEN, JJ., concur.