FIFTH DIVISION
 November 1, 1996








No. 1-94-4175

THE PEOPLE OF THE STATE OF ILLINOIS, )
 ) Appeal from the
 ) Circuit Court
 Plaintiff-Appellee, ) of Cook County.
 )
 v. ) 
 )
JOHN PARSONS, ) Honorable 
 ) Francis J. Mahon
 Defendant-Appellant. ) Judge Presiding.



 JUSTICE GORDON delivered the opinion of the court:
 The defendant, John Parsons, was charged by indictment with
aggravated arson for allegedly setting off an explosive device in
the bathroom of a Chicago bar in violation of section 20-1.1(a)
of the Illinois Criminal Code. Ill. Rev. Stat. 1989, ch. 38,
par. 20-1.1(a) now at 720 ILCS 5/20-1.1(a) (West 1994). After a
jury trial, the defendant was found guilty of aggravated arson,
and was sentenced to a term of 15 years' imprisonment. The
defendant filed motions to reduce his sentence and for a new
trial which the trial court denied. The defendant appeals his
conviction based on the purported insufficiency of his
indictment, and on the trial court's failure to instruct the jury
as to the lesser offense of criminal damage to property (see Ill.
Rev. Stat. 1991, ch. 38, par. 21-1 now at 720 ILCS 5/21-1 (West
1994)). The defendant also appeals the denial of his motions for
new trial and for a reduction of his sentence.
 Because the defendant does not challenge the sufficiency of
the evidence on appeal, the evidence adduced at trial is
summarized as follows. On October 25, 1992, the night of the
explosion at issue in this case, Margaret Summit owned a bar
called the His and Hers Lounge located at 5820 North Broadway in
Chicago. Summit testified that on that date, she was in her bar
attending a birthday party for one of her bartenders named Joe
Franco, and that Joe Franco and Timothy Janes, the bar's security
guard, were also with her in the bar. At approximately 1:30
a.m., with six or seven people left at the party, the defendant,
John Parsons, and his friend, Robert Cunningham, entered the bar. 
Summit knew Parsons because he had had an affair with her foster
daughter, Susan Hanson, over the course of many years, and had
spoken with and met with him on various occasions in the
preceding years. Summit testified that the affair had ended
shortly before the October 25 explosion, and that since it had
ended, Parsons had been calling Summit repeatedly in order to
locate Hanson. Summit testified that on one evening in September
1992, Parsons called her 30 times; that he called an average of
five times per day every other day; and that defendant angrily
threatened and cursed at Summit on more than one occasion when
she denied knowing where Hanson was. Summit testified that she
did not know the whereabouts of her foster daughter, Hanson, at
the time of the trial.
 Summit also testified that upon Parson's arrival at her bar
on October 25, she was seated at the end of the bar near the pool
table, approximately 35 feet away. Summit further testified that
she watched Parsons closely because she did not expect to see him
in her bar due to his telephone calls. She asked her friend Tim
Janes, the security guard at the bar, to watch the defendant,
stating, "Why is he here? He's making me nervous." Summit and
Janes both testified that they saw the defendant and Cunningham
have a couple of drinks and then walk to the pool table area
where there were two alcoves: one for bathrooms and the other
for a cigarette machine, a computer, and stereo speakers. 
According to the testimony of both Summit and Janes, the two men
stopped and studied the two alcoves, the defendant entered the
cigarette machine alcove for three or four minutes, and then
entered the men's bathroom for another four or five minutes. 
Janes and Summit both further testified that the defendant then
came out of the bathroom, nodded to his companion Cunningham,
shot one pool ball, and then, together with Cunningham, proceeded
directly towards the front door of the bar.
 Summit and Janes also testified that after the defendant
left the men's bathroom, Summit immediately asked Janes to go
into the bathroom to check it out. Without pause, Janes briefly
went into the bathroom where he looked under the sink, on the
floor, above the ceiling tiles and behind the toilet for any
damage and for an explosive device. When Janes came out of the
bathroom, the defendant and his companion were just leaving the
bar. As Summit asked Janes if he had found anything in the
bathroom, the bathroom blew up. Its door blew open, its ceiling
fell down, water came gushing out, and smoke alarms went off. 
Summit testified that she did not know how many customers went
into the men's restroom over the previous five hours, but that
the defendant was the last person other than Janes to exit that
restroom before the explosion.
 Summit and Janes testified that Janes then called the police
and fire departments and soon two Chicago police officers
responded. Officer Laurie Haughey inspected the premises and
interviewed several customers, Summit, Janes, and Joe Franco
regarding the incident. Haughey then called the bomb and arson
unit of the Chicago police department, and an officer from that
unit inspected the crime scene and later testified that an
explosive device had been placed in the toilet tank. Summit also
testified that shortly after the explosion and after the police
had arrived, she received a telephone call from someone whom she
identified as the defendant who said, "Hi, Margaret how you [sic]
doing, ha, ha, ha. Your bar is out of business like mine." 
Summit handed the telephone to Officer Haughey. Haughey
testified that the caller identified himself as "John." She
discussed the explosion with him and asked him if he would mind
returning to the bar, an invitation which he declined after
denying involvement in the incident. Haughey stated that the
same person called moments later, making the same statements to
her as he made in the earlier call. The State also offered
unchallenged testimony which revealed that the defendant was
identified in a lineup two days after the explosion by Summit,
Janes, and Franco.
 The defendant and Cunningham both testified for the defense
that they were in the bar prior to the explosion, had had drinks
and shot pool, but that the defendant had never inspected the
cigarette alcove or went into the bathroom that night. The
defendant also testified he had no explosive devices with him
when he went to the bar. The defendant admitted to placing the
first call to Summit's bar after the explosion from Cunningham's
car telephone and to speaking to Summit and to Officer Haughey,
but stated that he only asked for Susan Hanson when he called
because he had not inquired as to her whereabouts while at
Summit's bar. The defendant denied placing the second call to
the bar.
 During the conference on jury instructions, defense counsel
asked the court to instruct the jury on the offense of criminal
damage to property (see Ill. Rev. Stat. 1991, ch. 38, par. 21-1
now at 720 ILCS 5/21-1 (West 1994)), arguing that it was a lesser
included offense of aggravated arson. The court refused the
requested instruction. After the jury found the defendant guilty
of aggravated arson, the defendant was sentenced to 15 years in
the Illinois Department of Corrections.
 During the hearing on defendant's sentencing, the State
presented factors in aggravation, stating that the explosion was
the culmination of a long period of harassment directed at
Summit, which involved hundreds of harassing telephone calls and
various threats. Further, the State noted that the defendant
showed no remorse for his conduct, especially in light of his
call to the bar immediately after the explosion, during which he
allegedly gloated about blowing up part of Summit's bar, and that
the defendant's conduct created a grave danger to the occupants
of the bar even though no one was hurt. The defendant then
presented factors in mitigation, including the testimony of his
wife, who testified that the defendant had been a good father and
had been supportive of his family and was a business owner. 
Defense counsel stated that the sentence should reflect that the
explosive was merely a prank and should not be treated as a class
X felony.
 At the close of the sentencing hearing, the trial court
stated as follows:
 "I heard the evidence, and I don't think that it's
 necessary for there to be a specific intent to hurt
 somebody when they placed something in the toilet. But
 inasmuch as somebody just left that place, was [sic]
 certainly something that could be anticipated and I
 think it was very bad. I sentence you to 15 years in
 the Illinois Department of Corrections."
 Defendant thereupon filed a motion for reduction of his
sentence which the trial court denied. Defendant also filed a
motion for new trial on the grounds of newly discovered evidence. 
Attached to that motion were the affidavits of Valerie Johnson,
Patricia Kocheny and Donald Zouras. The Johnson affidavit stated
that a few weeks after defendant's trial, she overheard a
conversation between the defendant and Susan Hanson. During this
conversation, Johnson heard Hanson tell the defendant that Summit
had lied about the defendant's guilt; that Summit had described
the individuals who planted the bomb to Hanson and that Hanson
said that Summit's description fit two individuals named Hank and
Russell, rather than the defendant and Cunningham; that Hanson
would have liked to have helped the defendant but that she was
afraid that Summit would harm Hanson's child; and that Summit
knew where Hanson was during the trial. The Zouras and Kocheny
affidavits provided essentially the same allegations. They also
stated that Summit lied because she hated the defendant, and that
the source of their allegations was an alleged conversation
between Hanson and Summit which Hanson later related to these
affiants. The trial court denied defendant's motion for a new
trial.
DISCUSSION:
 The defendant contends for the first time on appeal that his
aggravated arson conviction should be reversed because his
indictment was insufficient insofar as it did not state that
defendant damaged property "by means of fire or explosive"
pursuant to the language of the arson statute as invoked by the
aggravated arson statute, set forth below. See 720 ILCS 5/20-1,
5/20-1.1 (West 1994). The defendant further contends that the
trial court erred in failing to instruct the jury on the offense
of criminal damage to property (Ill. Rev. Stat. 1991, ch. 38,
par. 21-1 now at 720 ILCS 5/21-1 (West 1994)), which he contends
is a lesser included offense of aggravated arson. The defendant
also urges that the trial court erred in denying his motion for a
new trial which was based upon alleged newly discovered evidence,
and that the trial court abused its discretion in imposing a
sentence of 15 years. For the following reasons, we affirm.
 We first address defendant's contention regarding the
alleged insufficiency of his indictment. Where an indictment is
challenged prior to trial, it must strictly comply with the
pleading requirements of the Code of Criminal Procedure (see 725
ILCS 5/111-1 et seq. (West 1994)), and therefore must, inter
alia, set forth the nature and elements of the offense charged. 
People v. Thingvold, 145 Ill. 2d 441, 584 N.E.2d 89 (1991);
People v. Libbra, 268 Ill. App. 3d 194, 643 N.E.2d 845 (1994). 
However, where, as here, the indictment is challenged for the
first time on appeal, the standard is less stringent (People v.
Maxwell, (1992) 148 Ill. 2d 116, 592 N.E.2d 960; People v.
Pujoue, (1975) 61 Ill. 2d 335, 335 N.E.2d 437; Libbra, 268 Ill.
App. 3d 194, 643 N.E.2d at 845); and the indictment is sufficient
if it "apprised the accused of the precise offense charged with
enough specificity to prepare his defense and allow pleading a
resulting conviction as a bar to future prosecution arising out
of the same conduct." Pujoue, 61 Ill. 2d at 339, 335 N.E.2d at
440. See also Libbra, 268 Ill. App. 3d 194, 643 N.E.2d 845. In
determining whether the indictment is sufficiently specific when
challenged for the first time on appeal, the court may look not
only to the indictment itself but also to the record to determine
whether the defendant was fully apprised of all of the elements
of the crime with which he was charged. See Pujoue, 61 Ill. 2d
335, 335 N.E.2d 437; Libbra, 268 Ill. App. 3d 194, 643 N.E.2d
845.
 In the instant case, the indictment against the defendant
charged that
 "on or about OCTOBER 25, 1992 at and within the County
 of Cook[,] JOHN PARSONS committed the offense of
 aggravated arson in that he knowingly damaged real
 property, to wit: the building located at 5820 North
 Broadway, in Chicago, Cook County, Illinois, and knew
 or reasonably should have known that one or more
 persons were present therein, in violation of Chapter
 38, section 20-1.1(a) of the Illinois Revised Statutes
 1989 as amended[.]"
Chapter 38, section 20-1.1(a) provides for the offense of
aggravated arson, stating in pertinent part as follows:
 "A person commits aggravated arson when in the course
 of committing arson he knowingly damages, partially or
 totally, any building or structure *** and (1) he knows
 or reasonably should know that one or more persons are
 present therein ***." Ill. Rev. Stat. 1989, ch. 38,
 par. 20-1.1(a) now at 720 ILCS 5/20-1.1(a) (West 1994).
The arson statute states that a "person commits arson when, by
means of fire or explosive, he knowingly *** damages any real
property *** of another without his consent ***." Ill. Rev.
Stat. 1989, ch. 38, par. 20-1 now at 720 ILCS 5/20-1 (West 1994).
 Here, the State's failure to allege in defendant's
indictment that he damaged property "by means of fire or
explosive" did not prevent defendant from defending himself and
will not preclude him from defending against any subsequent
prosecution based upon the same conduct. (Pujoue, 1 Ill. 2d 335,
335 N.E.2d 437; Libbra, 268 Ill. App. 3d 194, 643 N.E.2d 845). 
The indictment here set forth that defendant committed the
offense of aggravated arson by knowingly damaging property on a
specific date and at a specific address when he knew or
reasonably should have known that people were present therein. 
The record plainly shows that on the basis of this indictment,
the defendant aggressively and specifically defended against the
charge of setting off an explosive in the bathroom of Summit's
bar. Moreover, there is no question here that the indictment is
sufficient to preclude future prosecutions for the same conduct,
because it states the date of the offense and the street address
of the building in which it was committed. If anything, the fact
that the indictment is broad on its face makes it sufficient to
preclude the risk of double jeopardy for any form of damage to
Summit's property, whether or not caused by fire or explosive. 
In any event, when read together with the record, the indictment
sufficiently demonstrates that defendant was prosecuted
specifically for setting off an explosive at Summit's His and
Hers Lounge on October 25, 1992 and would therefore suffice to
preclude double jeopardy. See Pujoue, 61 Ill. 2d 335, 335 N.E.2d
437 (when defending against a subsequent prosecution on the
grounds of double jeopardy, a defendant is not confined in
presenting his defense to reliance upon the former indictment
alone, but may also resort to the record of the original
conviction); People v. Jones, 53 Ill. 2d 460, 292 N.E.2d 361
(1973)) See also People v. Ballard, 65 Ill. App. 3d 831, 835,
382 N.E.2d 800, 804 (1978) ("whether an indictment sufficiently
charges an offense does not depend on nice attention to
technicalities of pleadings or formalistic recital of
allegations").
 The defendant next contends that the trial court erred in
failing to instruct the jury on the offense of criminal damage to
property because it is a lesser included offense of aggravated
arson. We disagree. If otherwise supported by the evidence
presented, a defendant may be entitled to a jury instruction on a
less serious offense that is included in the offense with which
he has been charged. People v. Bryant, 113 Ill. 2d 497, 499
N.E.2d 413 (1986). Section 2-9 of the Criminal Code (720 ILCS
5/2-9 (West 1994)) defines an included offense as an offense
which
 "(a) is established by proof of the same or less than
 all of the facts or a less culpable mental state (or
 both), than that which is required to establish the
 commission of the offense charged, or (b) Consists of
 an attempt to commit the offense charged or an offense
 included therein."
 Our supreme court has noted that the foregoing statutory
definition does not specify what source to look at in order to
determine whether a given offense is a lesser included offense of
another. The courts have therefore developed three different
approaches towards making that determination. People v. Novak,
163 Ill. 2d 93, 643 N.E.2d 762 (1994). These approaches, which
were summarized in Novak, include the "abstract elements"
approach, in which the elements of each offense are compared and
an offense is considered to be a lesser included offense of
another where it would be impossible to commit the greater
offense without necessarily committing the lesser offense (see
People v. Files, (1994) 260 Ill. App. 3d 618, 632 N.E.2d 1087;
People v. Wys, (1982) 103 Ill. App. 3d 273, 431 N.E.2d 38); the
"charging instrument" approach, in which a court must look to the
facts alleged in the charging instrument, and may deem an offense
to be lesser included if it is described by the charging
instrument and if it has a "'broad foundation in the instrument
charging the greater,' or at least '[the indictment sets] out the
main outline of the lesser offense'" (Novak, 163 Ill. 2d at 107,
643 N.E.2d at 770 (quoting Bryant, 113 Ill. 2d at 505, 499 N.E.2d
at 416)); and the "factual" or "evidence" approach, which looks
to the facts adduced at trial on the offense charged (see Wys,
103 Ill. App. 3d 273, 431 N.E.2d 38). Moreover, regardless of
the approach used, no such instruction on any lesser included
offense is warranted unless, under a separate analysis of the
evidence presented as discussed more fully below, it is found
that a jury could rationally acquit the defendant of the greater
offense and convict him of the lesser offense. Novak, 163 Ill.
2d 93, 643 N.E.2d 762.
 After analyzing each of the foregoing approaches, the Novak
court adopted the "charging instrument" approach for Illinois
courts determining whether one offense is a lesser included
offense of another. We must therefore examine the indictment in
the instant case to determine whether the charges therein
describe the offense of criminal damage to property, or provide
an outline or a broad foundation for that lesser offense. See,
e.g., People v. Landwer, 166 Ill. 2d 475, 655 N.E.2d 848 (1995)
(holding under charging instruments approach that solicitation to
commit aggravated battery was outlined in the defendant's
solicitation to commit murder indictment and therefore is a
lesser included offense); People v. Kimball, 243 Ill. App. 3d
1096, 614 N.E.2d 273 (1993) (holding that aggravated assault was
not outlined in the defendant's murder indictment because the
charges did not indicate that the defendant placed the victim in
reasonable apprehension of receiving a battery, and therefore was
not a lesser included offense); Novak, 163 Ill. 2d 93, 643 N.E.2d
762; Bryant, 113 Ill. 2d 497, 499 N.E.2d 413.
 In the instant case, as noted, the indictment charges the
defendant with committing the offense of aggravated arson by
knowingly damaging Summit's bar while knowing that people were
present therein. The criminal damage to property statute states
in relevant part as follows:
 "(1) A person commits an illegal act when he: (a)
 knowingly damages any property of another without his
 consent; or (b) recklessly by means of fire or
 explosive damages property of another; or (c) knowingly
 starts a fire on the land of another without his
 consent ***" Ill. Rev. Stat. 1991, ch. 38, par. 21-1
 (now at 720 ILCS 5/21-1 (West 1994)).
 It is apparent that the indictment in the instant case
provides a sufficiently broad foundation to outline the offense
of criminal damage to property as provided in subsection (a) of
the criminal damage statute to support a characterization of the
criminal damage offense as a lesser included offense under the
charging instruments approach. As in subsection (a) of the
criminal damage offense, the indictment here describes a knowing
act of damage to Summit's property, and by force of reason
implies that defendant did the damage without consent. Moreover,
the indictment would also provide a sufficient outline for
subsections (b) and (c) of the criminal damage statute, where the
charges against the defendant are read, as already discussed, to
encompass the "by means of fire or explosive" language of the
arson statute, and where the higher mental state of knowledge can
be viewed to provide an outline for the mental state of
recklessness. See Landwer, 166 Ill. 2d 475, 655 N.E.2d 848
(stating that specific intent to solicit a murder involves more
culpable mental state than specific intent to solicit aggravated
battery, such that under charging instruments approach,
solicitation to commit aggravated battery is lesser included
offense of solicitation to commit murder).
 However, as already noted, our analysis of whether the trial
court erred in instructing the jury on the criminal damage
offense does not end with our determination that criminal damage
to property is a lesser included offense of aggravated arson. 
Rather, under Novak, the entitlement to the lesser included
offense instruction extends only if the evidence would rationally
permit a jury to acquit the defendant of the greater offense and
to determine that the defendant was guilty of the lesser offense. 
Hence, in Novak, the court stated that
 "[o]nce a lesser included offense is identified, the
 question remains whether the jury should be instructed
 on the lesser offense. The identification of a lesser
 included offense does not automatically give rise to a
 lesser offense. [Citation]. Rather an 'independent
 prerequisite' must be met for the giving of a lesser
 included offense instruction [citation], regardless of
 the approach used in identifying the lesser included
 offense. *** A defendant is entitled to a lesser
 included offense instruction only if the evidence would
 permit a jury rationally to find the defendant guilty
 of the lesser included offense and acquit him or her of
 the greater offense ***." Novak, 163 Ill. 2d at 107-
 08, 643 N.E.2d at 770.
See also People v. Smith, 274 Ill. App. 3d 84, 653 N.E.2d 944
(1995). Accord People v. Teague, 108 Ill. App. 3d 891, 906, 439
N.E.2d 1066, 1077 (1982) ("where the evidence shows the accused
is either guilty of the higher offense or not guilty of any
offense, an instruction on the lower offense is unnecessary and
properly refused"); People v. Thompson, 35 Ill. App. 3d 773, 342
N.E.2d 445 (1976).
 While it may be argued in the instant case that the evidence
presented by the State as to the aggravated arson charge could
also support a guilty verdict for the lesser included offense of
criminal damage to property, a jury could not rationally acquit
the defendant of the greater charge of aggravated arson so as to
confine its guilty verdict solely to the lesser included offense. 
See Novak, 163 Ill. 2d 93, 643 N.E.2d 762; Smith, 274 Ill. App.
3d 84, 653 N.E.2d 944. As noted, there was testimony presented
as to the defendant's motive and intent to set off the explosive
in Summit's bar, that defendant was in the bar while several
other people were also present, that he acted suspiciously, that
he was the last person in the bathroom besides Janes before the
explosion occurred, and that he telephoned the bar shortly after
he left to gloat over his accomplishment of setting off the
explosive that evening. There is no rational basis on which a
jury could separate the evidence of the implantation of the
explosive device from the evidence which showed that the
implantation was intentional and was performed with reason to
know that other people were present in the bar. See Teague, 108
Ill. App. 3d 891, 439 N.E.2d 1066; Thompson, 35 Ill. App. 3d 773,
342 N.E.2d 445. Consequently, there was no rational basis for
acquitting the defendant of the greater offense and for
convicting him only of the lesser included offense. See Novak,
163 Ill. 2d 93, 643 N.E.2d 762; Smith, 274 Ill. App. 3d 84, 653
N.E.2d 944.
 Moreover, we also note, although unnecessary to our
resolution of the instant dispute, that even if there had been an
entitlement to an instruction on the lesser included offense of
criminal damage to property, the evidence regarding the greater
offense was so strong that any failure to instruct on the lesser
would not have been prejudicial. See People v. McClellan, 232
Ill. App. 3d 990, 600 N.E.2d 407 (1992) (even if an instruction
on a lesser offense might have been given, the failure to give an
otherwise appropriate jury instruction will require reversal only
if the defendant was so prejudiced by such failure as to affect
the outcome of the verdict); People v. Fonville, 158 Ill. App. 3d
676, 511 N.E.2d 1255 (1987).
 The defendant next contends that the trial court erred in
denying his motion for a new trial, which was based on the
affidavits attached to that motion as set forth above which
purport to reveal that Summit recanted her testimony against the
defendant in conversations with Hanson as overheard by the
affiants. We find this contention to be without merit.
 "It has long been recognized that evidence of
 recantation is inherently unreliable and insufficient
 to warrant a new trial. [Citation.] A court will
 usually deny a new trial based on the ground of
 recanted testimony where it is not satisfied that such
 testimony is true. [Citation.] Only in extraordinary
 and unusual cases will recanting testimony of witnesses
 be regarded as sufficient ground for a new trial." 
 People v. Dempsey, 242 Ill. App. 3d 568, 610 N.E.2d 208
 (1993).
See also People v. Hallom, 265 Ill. App. 3d 896, 638 N.E.2d 765
(1994) (newly discovered evidence which only has the effect of
impeaching, discrediting, or contradicting a witness is
insufficient to justify a new trial).
 Our supreme court in People v. Miller, 79 Ill. 2d 454, 404
N.E.2d 199 (1980) set forth the factors to be considered on the
review of an order denying a motion for a new trial:
 "'A motion for a new trial on the ground of newly
 discovered evidence is addressed to the sound
 discretion of the trial judge and denial thereof will
 not be disturbed upon review in the absence of a
 showing of an abuse of discretion. [Citation.] To
 warrant a new trial, the new evidence must be of such a
 conclusive character that it will probably change the
 result on retrial, that it must be material to the
 issue but not merely cumulative, and that it must have
 been discovered since the trial and be of such
 character that it could not have been discovered prior
 to trial by the exercise of due diligence. 
 [Citation.]' ***. 'Applications for new trial on the
 ground of newly discovered evidence are not looked upon
 with favor by the courts, and in order to prevent, so
 far as possible, fraud and imposition which defeated
 parties may be tempted to practice, as a last resort,
 to escape the consequence of an adverse verdict, such
 application should always be subjected to the closest
 scrutiny by the court, and the burden is upon the
 applicant to rebut the presumption that the verdict is
 correct and to show that there had been no lack of
 diligence.' [Citations.]" People v. Miller, 79 Ill.
 2d at 464-65, 404 N.E.2d at 204.
 We hold that the trial court properly denied defendant's
motion for a new trial, because the evidence, if believed, is not
of such a conclusive character that it would probably change the
result on retrial. The affidavits attached to that motion
purport to cast doubt upon Summit's testimony against the
defendant through highly unreliable hearsay. As noted, the
Johnson affidavit avers that Johnson overheard Susan Hanson, the
defendant's estranged mistress, tell the defendant that after the
defendant's trial, Summit described the man who set the explosive
to Hanson, and Hanson believed that they fit the description of
persons named Hank and Russell, not of the defendant and
Cunningham. Johnson also averred in her affidavit that she heard
Hanson tell the defendant that Hanson would have helped him but
for her fear that Summit would harm Hanson's child, and Johnson
further averred that she heard Hanson tell the defendant that
Summit knew where Hanson was during the trial. Similarly, Zouras
and Kocheny averred in their affidavits that they heard the same
allegations and that Summit had lied because she hated the
defendant, allegations which derived from an alleged conversation
between Hanson and Summit as related to the affiants by Hanson. 
These hearsay upon hearsay statements, which purport to report
the remarks of the potentially biased alleged mistress of the
accused regarding Summit's supposed contradiction of her trial
testimony, are not in the nature of conclusive evidence which, if
believed, would probably change the result on retrial. Miller,
79 Ill. 2d 454, 404 N.E.2d 199.
 Moreover, the evidence adduced at trial, independent of
Summit's testimony, was sufficient by itself to support the
defendant's conviction. As noted, Timothy Janes presented
essentially the same testimony as Summit did, and the defendant
does not purport to have new evidence which would discredit that
testimony. Janes testified that he saw the defendant in the bar
that night, saw him act suspiciously, and identified the
defendant as the last person to leave the bathroom prior to the
explosion. The defendant himself admitted to having called the
bar that night shortly after the explosion and after he left the
bar, but denied having gloated about destroying the bathroom in
that conversation and instead stated that he had called the bar
only to ask if Hanson was there, without explaining why he did
not inquire into her whereabouts while at the bar earlier in that
same hour. Moreover, the defendant was identified as the
perpetrator of the explosion in a lineup two days after the
explosion in Summit's bar, not only by Summit, but also by Janes
and Franco. We cannot say that in light of this evidence, there
was any abuse of discretion in denying defendant's new trial
motion or that a retrial would probably change the result.
 The defendant relies on the decision in People v. Villareal,
201 Ill. App. 3d 223, 559 N.E.2d 77 (1990) in support of his
contention that a new trial is warranted here because according
to his new trial affidavits Summit lied at trial. However, the
decision in Villareal is inapposite. In that case, new evidence
was discovered after trial which revealed that the State's sole
eyewitness to the defendant's allegedly criminal conduct had
given false testimony. The court noted that because that witness
was the only eyewitness to events central to the conviction, a
new trial was required. Unlike the evidence presented at trial
in Villareal, here there were multiple eyewitnesses and other
circumstances already discussed which support the defendant's
conviction even absent Summit's testimony.
 The defendant next contends that the trial court erred in
denying his motion to reduce the 15-year term of his sentence
because he had no prior felony convictions, owned his own
business, supported his family, and because his alleged crime was
really in the nature of a prank where no one was injured. We
disagree. It is well established that the trial court is
generally in the best position during the trial and the hearing
in aggravation and mitigation to make a sound determination as to
the punishment to be imposed than are courts of review. People
v. Cabrera, 116 Ill. 2d 474, 508 N.E.2d 708 (1987). Many factors
enter into sentencing determinations, such as the nature of the
crime, the protection of the public, deterrence, and punishment,
as well as the defendant's rehabilitative prospects and youth. 
People v. Whitehead, 171 Ill. App. 3d 900, 525 N.E.2d 1084
(1988). Therefore, the trial court is vested with wide
discretion in imposing sentences (People v. Hattery, 183 Ill.
App. 3d 785, 539 N.E.2d 368 (1989)), and its decision may not be
disturbed absent an abuse of discretion. Cabrera, 116 Ill. 2d
474, 508 N.E.2d 70; People v. Almo, 108 Ill. 2d 54, 483 N.E.2d
203 (1985).
 Here, as noted, in addition to all of the evidence presented
at trial, the trial court heard both factors in aggravation and
in mitigation before sentencing the defendant. The State urged
in aggravation that the defendant had programmatically harassed
Summit with hundreds of telephone calls and with threats, gloated
after the explosion, and risked lives with his alleged conduct
although nobody had been hurt. The defendant submitted in
mitigation that there was no evidence of the intent to injure
anyone, and also submitted his wife's testimony, who stated that
the defendant was a good father, supportive of their family, and
was a business owner. After hearing the testimony, the trial
court sentenced the defendant to 15 years' imprisonment. We
cannot say that on the basis of all of the evidence at trial and
the factors presented in aggravation and mitigation that the
trial court abused its discretion in imposing this sentence.
 We also reject the defendant's contention that his sentence
should be reduced because the trial court allegedly improperly
relied on the defendant's remorselessness (see People v. Evans,
143 Ill. App. 3d 236, 492 N.E.2d 1036 (1986)) and on his
knowledge that other people were in the bar, an element of
aggravated arson (see People v. Saldivar, 113 Ill. 2d 256, 497
N.E.2d 1138 (1986)), and because the trial court disregarded
comparable federal sentencing guidelines when determining the
defendant's sentence. We first note that defendant points to no
authority in support of his apparent contention that federal
sentencing guidelines should have played some role in the trial
court's sentencing procedure, and he has therefore waived that
argument. See Illinois Supreme Court Rules 341(e)(7), 612(i)
(155 Ill. 2d R. 341(e)(7), 612 (i)); In re Marriage of Winton,
216 Ill. App. 3d 1084, 576 N.E.2d 856 (1991); Bank of Illinois v.
Thweatt, 258 Ill. App. 3d 349, 630 N.E.2d 121 (1994). Moreover,
with respect to the possibility that the trial court improperly
relied on the defendant's remorselessness or on the presence of
other people in the bar when sentencing the defendant, we note
that these factors are not dispositive in light of the mass of
other evidence and factors presented in the trial court, as
already noted, available as premises for the defendant's
sentence. We therefore cannot find that there was any abuse of
discretion in the imposition of the sentence. See also People v.
Partin, 156 Ill. App. 3d 365, 509 N.E.2d 662 (1987) (there is a
strong presumption that a trial court considered any evidence of
mitigation before it and based the defendant's sentence upon
proper legal reasoning).
 Finally, the defendant would urge that his sentence was
greater than the 6- to 10- year sentence suggested by the state
in a plea proposal rejected by the defendant before electing to
proceed to a jury trial, and that therefore, he was penalized by
the trial court for invoking his right to trial by jury. This
contention is without merit. A trial court is free to accept or
reject any sentencing recommendations whether made by the
prosecution or the defense, and in the absence of a plea
agreement accepted by the court, no recommendation by counsel is
binding on the court. People v. Sanders, 198 Ill. App. 3d 178,
555 N.E.2d 812 (1990). Moreover, there is nothing inherently
unconstitutional in increasing a sentence after trial. Such an
increase need not connote the imposition of a penalty because the
defendant elected to proceed to trial, but, rather, the disparity
may simply reflect an inducement given to a defendant to plea
bargain in exchange for a sentence less than that which is
ordinarily warranted. That, by itself, is not unlawful. See
Sanders, 198 Ill. App. 3d 178, 555 N.E.2d 812. We also note
that, in this case, the defendant took the stand as a witness and
denied his involvement in the explosion in Summit's bar. Under
those circumstances, the court may well have been within its
discretion to consider the defendant's perjury as a factor in
aggravation. See People v. Denton, 256 Ill. App. 3d 403, 628
N.E.2d 900 (1993). As already noted, after trial, the State
recommended a sentence of 20 years' imprisonment. Except for the
fact that a greater sentence than that proposed by the State in
plea negotiations was ultimately imposed upon the defendant,
defendant provides no other evidence that his sentence was a
penalty for his election to proceed to a trial by jury, and
therefore we do not view his sentence in that respect as an abuse
of discretion.
 As part of this order we grant the State's motion and assess
defendant $100 as costs for this appeal.
 In all other respects, the judgment of the Circuit Court of
Cook County is affirmed.
 Affirmed.
 McNULTY, P.J. and COUSINS, Jr., J., concur.