2020 IL App (4th) 180165

Opinion filed December 24, 2020

IN THE

APPELLATE COURT OF ILLINOIS

FOURTH DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 11th Judicial Circuit, McLean County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 4-18-0165 Circuit No. 10-CF-1117 |
| DAVID MICHAEL BOSWELL, | ) ) ) | Honorable Robert L. Freitag, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Presiding Justice Lytton and Justice Wright concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, David Michael Boswell, appeals the second-stage dismissal of his amended postconviction petition. Defendant argues that he made a substantial showing that his trial counsel labored under a *per se* conflict of interest and an actual conflict of interest. Alternatively, defendant argues that his postconviction counsel provided an unreasonable level of assistance in failing to supplement the amended petition with certain newspaper articles. We reverse and remand.

¶ 2                                    I. BACKGROUND

¶ 3        Defendant was charged with three counts of first degree murder (720 ILCS 5/9-1(a)(1)

(West 2010)) for causing the death of Mark Olson. The public defender's office was appointed to

represent defendant. Defendant was represented at his jury trial by Assistant Public Defenders

Carla Barnes and Brian McEldowney. The State was represented by State's Attorney William

Yoder and Assistant State's Attorney Jane Foster. On August 19, 2011, the jury found defendant

guilty of first degree murder.

¶ 4        On August 31, 2011, defendant filed a posttrial motion through counsel, arguing that (1)

the State failed to prove the elements of the offense, (2) the finding of the jury was against the

manifest weight of the evidence, (3) the court improperly allowed the State to elicit certain

testimony, (4) the court improperly permitted two detectives to be present throughout the trial, and

(5) the court improperly allowed the State to show the jury certain autopsy photographs. The court

denied the motion and sentenced defendant to 45 years' imprisonment.

¶ 5        On direct appeal, defendant argued that (1) the evidence was insufficient to prove him

guilty beyond a reasonable doubt, (2) the circuit court abused its discretion in admitting certain

evidence, (3) the court sentenced him based on a mistaken belief about the nature of the offense,

(4) his sentence was excessive, and (5) the court failed to assess defendant's ability to pay in

ordering him to pay restitution. *People v. Boswell*, 2013 IL App (4th) 120049-U, ¶ 7. The appellate

court affirmed defendant's conviction and sentence. *Id.* ¶ 61.

¶ 6        Defendant filed a *pro se* postconviction petition, which was summarily dismissed by the

circuit court. Defendant appealed the summary dismissal. Appellate counsel filed an agreed motion

for summary remand, stating that counsel had received an affidavit executed by Laura McBride,

an investigator for the McLean County Public Defender's Office. The affidavit stated that Kim

Campbell, the McLean County Public Defender at the time of defendant's trial, told McBride that she helped Foster write the State's closing argument for defendant's trial. The affidavit was executed after defendant filed his *pro se* postconviction petition. The appellate court granted the motion and remanded the matter to the circuit court "for further proceedings on the petition for post-conviction relief and the appointment of counsel to represent [defendant] including amending the petition to include the conflict of interest claim."

¶ 7        On remand, defendant filed an amended postconviction petition through counsel. In the petition, defendant alleged, *inter alia*, that he received ineffective assistance of counsel because a conflict of interest existed where Campbell colluded with Foster by aiding her with defendant's trial. Defendant cited authority indicating that it is not necessary to demonstrate prejudice where a *per se* conflict of interest existed.

¶ 8        Defendant attached two affidavits executed by McBride to his petition. In the affidavits, McBride averred that she and Campbell were present during the closing arguments at defendant's trial. Campbell told McBride that she taught Foster everything she knew. Campbell also said that she helped Foster write her rebuttal closing argument for defendant's trial. McBride stated that Campbell had supervisory authority over all the assistant public defenders in the county, including the ones who represented defendant. McBride stated that she told Barnes what Campbell had said the weekend after the guilty verdict was returned. McBride also stated that approximately two years after defendant's trial, Campbell and Foster were at a staff party at McBride's house. McBride overheard Campbell and Foster discussing Campbell's plan to get a potential client to hire Foster to privately represent her in a criminal matter rather than the public defender's office representing the client.

3

¶ 9        The State filed a motion to dismiss the amended postconviction petition. The State argued that defendant failed to make a substantial showing of a *per se* conflict because, pursuant to Illinois case law, Campbell's conflict was not imputed to Barnes and McEldowney. The State argued that because no *per se* conflict existed, the conflict should be addressed as an actual conflict for which a showing of prejudice was required. The State contended that defendant failed to plead any facts or make any arguments that he was prejudiced by the alleged conflict of interest.

¶ 10        Defendant filed a response arguing that he had made a substantial showing of a *per se* conflict. Defendant also argued that he was prejudiced by the conflict because Campbell obstructed the performance of Barnes and McEldowney by aiding the State in rebutting the arguments and evidence they presented.

¶ 11        A hearing was held on the State's motion to dismiss. In responding to the State's arguments, postconviction counsel argued that even if the court found there was no *per se* conflict, there was actual prejudice. Postconviction counsel noted that McBride's affidavit indicated that she told Barnes about Campbell's conduct, and the record did not indicate that Barnes told anyone.

¶ 12        The circuit court granted the State's motion to dismiss in a written order. Regarding the conflict of interest claim, the court found that the allegations in the amended petition adequately set forth a claim of a conflict of interest on the part of Campbell. The court reasoned:

    "The case law in the area of conflict of interest has, however, consistently rejected the notion that a public defender's office is to be treated the same as a private law firm or 'entity' in considering a conflict of interest claim, [citation]. The disqualification of one attorney in a public defender's office due to a conflict of interest will not necessarily disqualify all members of the public defender's office, [citation]."

4

The court found that the specific facts of the case did not warrant attributing Campbell's conflict to Barnes and McEldowney and that Campbell's alleged conduct did not create a *per se* conflict on the part of Barnes and McEldowney. The court reasoned:

> "While undoubtedly the allegation against Ms. Campbell is disturbing and even shocking, nothing in the amended petition or the supporting affidavits or exhibits even remotely suggests that either trial counsel, Ms. Barnes or Mr. McEldowney, had any knowledge of or participation whatsoever in Ms. Campbell's alleged assistance to the prosecution."

The court then found that the amended petition alleged only that a *per se* conflict existed due to Campbell's alleged collusion with the prosecution. The court stated that there were no allegations in the petition that there was an actual conflict of interest or that trial counsel's strategy or decision-making was affected by the alleged conflict.

¶ 13                                    II. ANALYSIS

¶ 14        Defendant argues that the circuit court erred in dismissing his amended postconviction petition at the second stage of postconviction proceedings. Specifically, defendant contends that he made a substantial showing that his defense counsel labored under a conflict of interest where Campbell actively assisted Foster and where Barnes failed to include this information in a posttrial motion, despite being aware of it. Defendant makes alternative arguments that both Campbell and Barnes had *per se* and actual conflicts of interest. We find that, taking the allegations in the petition as true, defendant has made a substantial showing that Campbell labored under a *per se* conflict of interest that disqualified her and all of the assistant public defenders that she supervised from representing defendant. We also find that the statements in McBride's affidavits support an inference that Barnes labored under an actual conflict of interest.

5

¶ 15      At the second stage of postconviction proceedings, "the circuit court must determine whether the petition and any accompanying documentation make a 'substantial showing of a constitutional violation.' " *People v. Domagala*, 2013 IL 113688, ¶ 33 (quoting *People v. Edwards*, 197 Ill. 2d 239, 246 (2001)). At this stage, "all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). The court is not to engage in fact-finding or credibility determinations at the second stage, as these determinations are to be made at the evidentiary stage. *Domagala*, 2013 IL 113688, ¶ 35. When a postconviction petition is dismissed at the second stage, we review the circuit court's decision *de novo*. *Pendleton*, 223 Ill. 2d at 473.

¶ 16      "It is well settled that a criminal defendant's sixth amendment right to effective assistance of counsel includes the right to conflict-free representation." *People v. Fields*, 2012 IL 112438, ¶ 17. Illinois courts have recognized two categories of conflicts of interest: *per se* and actual. *Id.*

¶ 17      "A *per se* conflict of interest exists where certain facts about a defense attorney's status, by themselves, engender a disabling conflict." *Id.* That is, "a *per se* conflict arises when a defendant's attorney has a tie to a person or entity that would benefit from an unfavorable verdict for the defendant." *Id.* Our supreme court has reasoned that "the knowledge that a favorable result for the defendant would inevitably conflict with the interest of [counsel's] client, employer or self might 'subliminally' affect counsel's performance in ways difficult to detect and demonstrate." *People v. Spreitzer*, 123 Ill. 2d 1, 16 (1988). Also, such a conflict may "unnecessarily subject the attorney to 'later charges that his representation was not completely faithful.' " *Id.* at 16-17 (quoting *People v. Stoval*, 40 Ill. 2d 109, 113 (1968)).

¶ 18      Our supreme court has held that *per se* conflicts exist in three situations: "(1) where defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity

6

assisting the prosecution; (2) where defense counsel contemporaneously represents a prosecution witness; and (3) where defense counsel was a former prosecutor who had been personally involved with the prosecution of defendant." *Fields*, 2012 IL 112438, ¶ 18. If a *per se* conflict is found, the defendant is not required to show that the conflict affected the attorney's actual performance. *Id.* A *per se* conflict is automatic grounds for reversal unless the defendant waives the conflict. *Id.*

¶ 19        "If a *per se* conflict does not exist, a defendant may still establish a violation of his right to effective assistance of counsel by showing an actual conflict of interest that adversely affected his counsel's performance." *People v. Hernandez*, 231 Ill. 2d 134, 144 (2008). "To do so, he must show 'some specific defect in his counsel's strategy, tactics, or decision making attributable to [a] conflict.' " *People v. Morales*, 209 Ill. 2d 340, 349 (2004) (quoting *Spreitzer*, 123 Ill. 2d at 18). A defendant is not required to show that the conflict contributed to his or her conviction. *People v. Taylor*, 237 Ill. 2d 356, 375 (2010).

¶ 20        Here, taking the allegations in defendant's amended postconviction petition as true, Campbell clearly had a *per se* conflict of interest. It is alleged that Campbell not only had a contemporaneous "association" with the prosecution but that she actively aided the prosecution in crafting its closing argument in defendant's case. While Campbell herself did not actively represent defendant, she was appointed to represent defendant as the county public defender. Also, the amended petition and one of McBride's affidavits allege that Campbell had supervisory authority over all the assistant public defenders in her office, including Barnes and McEldowney.

¶ 21        Having found that Campbell had a *per se* conflict of interest based on the allegations in the amended petition, we proceed to consider whether this conflict may be imputed to Barnes and McEldowney. Our supreme court has treated public defender's offices differently from private law firms in the context of conflict of interest cases. *People v. Banks*, 121 Ill. 2d 36, 41 (1987). "While

7

a conflict of interest among any member of a private law firm will disqualify the entire firm [citation], the disqualification of an assistant public defender will not necessarily disqualify all members of that office [citation]." *Id.*; see also *People v. Miller*, 79 Ill. 2d 454, 461 (1980) ("[W]e have rejected the notion that a public defender's office is to be treated as a law firm or an 'entity' in considering a conflict of interest claim."); *People v. Robinson*, 79 Ill. 2d 147, 158-59 (1979).

> "Rather than applying a *per se* rule, thereby disqualifying an entire public defender's office whenever one of its members is confronted with a conflict, a case-by-case inquiry is contemplated whereby it is determined whether any facts peculiar to the case preclude the representation of competing interests by separate members of the public defender's office." *Miller*, 79 Ill. 2d at 462.

¶ 22    In *Spreitzer*, our supreme court considered a similar, though not identical, situation to the one presented in the instant case. The *Spreitzer* defendant argued that a *per se* conflict existed when a former assistant state's attorney, who was involved in the decision to charge him, became the county public defender during the pendency of his case and, accordingly, became the employer of the assistant public defender assigned to represent him. *Spreitzer*, 123 Ill. 2d at 11-12, 22. The *Spreitzer* court held that the assistant public defender's status as the employee of the county public defender did not create a *per se* conflict because "the asserted disjunction between [the assistant public defender's] duty to her client and her supposedly conflicting loyalty to [the county public defender] [was] extremely speculative and remote." *Id.* at 22. The court noted that the assistant public defender would not have to attack any prior action that she had personally taken. *Id.* The court also noted:

> "[The county public defender's] tie to the prosecution, a tie which was itself fairly tenuous, would be counterbalanced by his present status as the public defender.

8

Presumably he was more interested in winning cases currently assigned to his office than in protecting the integrity of the decisions he had made when he was a prosecutor." *Id.*

¶ 23    In *Spreitzer*, like in the instant case, it was clear that the county public defender, who was the employer of the attorney appointed to represent the defendant, had a *per se* conflict of interest. However, unlike in *Spreitzer*, Campbell's tie to the prosecution was not "fairly tenuous," and we cannot presume that it was counterbalanced by her status as the public defender. Unlike the county public defender in *Spreitzer*, whose only involvement in the defendant's case occurred when he was employed by the state's attorney's office, Campbell allegedly assisted the State in defendant's prosecution *while she was employed as the public defender and defendant was represented by her office*. Accordingly, we cannot presume that Campbell was more interested in winning the cases assigned to her office than in helping Foster, when it appears that was not actually the case.

¶ 24    Considering the facts of this particular case as alleged by defendant, we find that the nature of Campbell's *per se* conflict of interest precluded the assistant public defenders that she supervised from representing defendant. Campbell did not merely have an "association" with the prosecution; she is alleged to have actively aided the State in prosecuting defendant, a client whom her office had been appointed to represent. She may have had access to confidential information about defendant's case, and, in her supervisory role, she may have influenced Barnes and McEldowney in subtle ways. Notably, McBride stated in one of her affidavits that she told Barnes about Campbell's conduct after the verdict but before defendant's posttrial motion was filed. However, the record does not indicate that Barnes brought Campbell's conduct to the court's attention, in the posttrial motion or otherwise. Assuming the truth of McBride's statements, this

supports an inference that Barnes's reluctance to bring this to the court's attention may have been a result of conflicting loyalties toward her employer and defendant.

¶ 25　　　We emphasize that our holding that Campbell's alleged *per se* conflict disqualified the assistant public defenders in her office from representing defendant is limited to the particular facts of this case. This case does not present one of the relatively common *per se* conflict of interest situations where one assistant public defender is appointed to represent a defendant and another attorney in the office either (1) represents a prosecution witness, (2) represents or previously represented the victim, or (3) was a former prosecutor who had been involved in the defendant's prosecution. Rather, the facts alleged in this case present an unusual, and particularly egregious, *per se* conflict of interest where it is alleged that the county public defender actively aided the State in prosecuting a client her office had been appointed to represent.

¶ 26　　　As we have found that defendant made a substantial showing of a *per se* conflict of interest, we need not consider whether defendant has also shown that an actual conflict existed. However, we find that the allegations in the postconviction petition and McBride's affidavits also made a substantial showing that Barnes labored under an actual conflict of interest. That is, McBride stated that she told Barnes about Campbell's conduct after the verdict but before the posttrial motion was filed. However, the record does not indicate that Barnes brought this to the court's attention or sought a new trial for defendant on this basis. Thus, McBride's statements support an inference that there was a defect in Barnes's decision-making that was attributable to her conflicting loyalties to defendant and her employer. See *Morales*, 209 Ill. 2d at 349.

¶ 27　　　　　　　　　　　　　　　　III. CONCLUSION

¶ 28　　　For the foregoing reasons, we hold that, taking the allegations in defendant's amended postconviction petition and supporting documentation as true, defendant has made a substantial

10

showing that Campbell had a *per se* conflict of interest that disqualified Barnes and McEldowney and that Barnes labored under an actual conflict of interest. Accordingly, defendant is entitled to a third-stage evidentiary hearing on his conflict of interest claim. We do not reach the second issue raised on appeal—namely, that postconviction counsel provided unreasonable assistance in failing to supplement the amended petition with certain newspaper articles. The judgment of the circuit court of McLean County is reversed, and the matter is remanded for third-stage postconviction proceedings.

¶ 29            Reversed and remanded.

**No. 4-18-0165**

| | |
|---|---|
| **Cite as:** | *People v. Boswell*, 2020 IL App (4th) 180165 |
| **Decision Under Review:** | Appeal from the Circuit Court of McLean County, No. 10-CF-1117; the Hon. Robert L. Freitag Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and S. Emily Hartman, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Don Knapp, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and Luke McNeill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |